UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

KAREN CAMESI, ERIN O'CONNELL, LORI
SHAFFER AND DINAH BAKER,
*on behalf of themselves and all other employees similarly
situated,*

Plaintiffs,

v.

UNIVERSITY OF PITTSBURGH MEDICAL
CENTER, UPMC, UPMC HEALTH SYSTEM,
UPMC BEDFORD MEMORIAL, UPMC
BRADDOCK, UPMC MCKEESPORT, UPMC
NORTHWEST, UPMC PASSAVANT, UPMC
PRESBYTERIAN, UPMC PRESBYTERIAN
SHADYSIDE, UPMC SHADYSIDE, UPMC
SOUTHSIDE, UPMC ST. MARGARET, MAGEE
WOMENS HOSPITAL OF UPMC, THE MERCY
HOSPITAL OF PITTSBURGH, MONTEFIORE
HOSPITAL, MONTEFIORE UNIVERSITY
HOSPITAL, WESTERN PSYCHIATRIC
INSTITUTE AND CLINIC, CHILDREN'S
HOSPITAL OF PITTSBURGH OF THE UPMC
HEALTH SYSTEM, UPMC LEE, UPMC HORIZON,
UPMC HOLDING COMPANY, INC., UPMC
HEALTH NETWORK, INC., JEFFREY A. ROMOFF,
GREGORY PEASLEE, UPMC 401A RETIREMENT
SAVINGS PLAN, UPMC 403B RETIREMENT
SAVINGS PLAN AND UPMC BASIC RETIREMENT
PLAN,

Defendants.

COMPLAINT- CLASS ACTION
AND DEMAND FOR JURY TRIAL

Civil Action

No. _____

## NATURE OF CLAIM

1.     This is a proceeding for injunctive and declaratory relief and monetary

damages to redress the deprivation of rights secured to plaintiffs, Karen Camesi, Erin

O'Connell, Lori Shaffer and Dinah Baker individually, as well as all other employees similarly

situated ("Class Members"), under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA"); and under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001 *et seq.*, and under the Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*

## JURISDICTION AND VENUE

1.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343 (3) and (4) conferring original jurisdiction upon this Court of any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of civil rights; under 28 U.S.C. § 1337 conferring jurisdiction of any civil action arising under any Act of Congress regulating interstate commerce; and under the Declaratory Judgment Statute, 28 U.S.C. § 2201, under 29 U.S.C. §216 (b), and under 18 U.S.C. § 1964(a) and (c).

2.     Venue is appropriate in the Western District of Pennsylvania since the allegations arose in this district and the Plaintiffs reside in this district.

## CLASS ACTION ALLEGATIONS

3.     The claims arising under ERISA and RICO are properly maintainable as a class action under Federal Rule of Civil Procedure 23.

4.     The class action is maintainable under subsections (1), (2) and (3) of Rule 23(b).

5.     The class consists of current and former employees of defendants whose 401(k) plans were not credited with their non-reduced weekly wages and correct overtime compensation.   Additionally, the class consists of current and former employees of defendants who were injured by defendants' scheme to cheat employees out of their property

and to convert the employees' property, including their wages and/or overtime pay, by misleading employees about their rights under the FLSA.

6.     The class size is believed to be over 40,000 employees.

7.     The Plaintiffs will adequately represent the interests of the Class Members because they are similarly situated to the Class members and their claims are typical of, and concurrent to, the claims of the other Class Members.

8.     There are no known conflicts of interest between the Plaintiffs and the other Class Members.

9.     The class counsel, Dolin, Thomas & Solomon LLP, is qualified and able to litigate the Plaintiffs' and Class Members' claims.

10.     The class counsel concentrates its practice in employment litigation, and its attorneys are experienced in class action litigation, including class actions arising under federal wage and hour laws.

11.     Common questions of law and fact predominate in this action because the claims of all Plaintiffs and Class Members are based on whether defendants' policy of not crediting employees with their non-reduced weekly wages and correct overtime compensation is a violation of ERISA or was part of a scheme to defraud Plaintiffs in violation of RICO.

12.     The class action is maintainable under subsections (2) and (3) of Rule 23(b) because the Plaintiffs seek injunctive relief, common questions of law and fact predominate among the Plaintiffs and Class Members and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

## PARTIES

**A.    Defendants**

13.    Collectively, defendants University Of Pittsburgh Medical Center, UPMC, UPMC Health System,  UPMC Bedford Memorial, UPMC Braddock, UPMC Mckeesport, UPMC Northwest, UPMC Passavant, UPMC Presbyterian, UPMC Presbyterian Shadyside, UPMC Shadyside, UPMC Southside, UPMC St. Margaret, Magee Womens Hospital of UPMC, The Mercy Hospital of Pittsburgh, Montefiore Hospital, Montefiore University Hospital, Western Psychiatric Institute and Clinic, Children's Hospital of Pittsburgh of The UPMC Health System, UPMC Lee, UPMC Horizon, UPMC Holding Company, Inc., UPMC Health Network, Inc., Jeffrey A. Romoff, Gregory Peaslee, UPMC 401A Retirement Savings Plan, UPMC 403B Retirement Savings Plan and UPMC Basic Retirement Plan (collectively, "Named Defendants") are related organizations through, for example, common membership, governing bodies, trustees and/or officers and benefit plans.

14.    Named Defendants health care facilities and centers include the following: UPMC Presbyterian, UPMC Montefiore, UPMC Southside, UPMC Shadyside, Magee-Womens Hospital of UPMC, UPMC Bedford Memorial, UPMC Braddock, UPMC Horizon (Greenville and Shenango Valley Campus), UPMC McKeesport, UPMC Mercy, UPMC Northwest, UPMC Passavant (McCandless and Cranberry Campus), UPMC Cancer Center, Hillman Cancer Center, Institute for Rehabilitation and Research, Children's Hospital of Pittsburgh of UPMC, Eye & Ear Institute, ISMETT, UPMC St. Margaret, Western Psychiatric Institute and Clinic, UPMC Cancer Center at Magee-Womens Hospital, UPMC Cancer Center at the Mary Hillman Jennings Radiation Oncology Center, UPMC Cancer Center at UPMC Presbyterian, UPMC Cancer Center at Veterans Affairs Medical Center,

UPMC Cancer Center, Natrona Heights, UPMC Cancer Center at UPMC Horizon - Shenango Valley, UPMC Cancer Center New Castle, UPMC Cancer Center at UPMC Passavant, UPMC Cancer Center at UPMC St. Margaret, UPMC Cancer Center at UPMC Northwest, UPMC Cancer Center Wexford, UPMC Cancer Center at Clarion Hospital, UPMC/Jameson Cancer Center, UPMC Cancer Center, Greenville, Grove City Medical Center, UPMC Cancer Center at Jefferson Regional Medical Center, Radiation Oncology Center at Jefferson Regional Medical Center, UPMC Cancer Center at St. Clair Hospital, UPMC Cancer Center Uniontown, Robert E. Eberly Pavilion, UPMC Cancer Center Upper St. Clair, UPMC Cancer Center Washington, UPMC and The Washington Hospital Cancer Center, Arnold Palmer Pavilion at Mountain View Medical Park, UPMC Cancer Center Indiana, UPMC Cancer Center Oakbrook Commons, UPMC Cancer Center at UPMC McKeesport, UPMC Cancer Center Monroeville / Haymaker, UPMC Cancer Center Monroeville / Mosside, UPMC Cancer Center Mt. Pleasant, John P. Murtha Regional Cancer Center, UPMC Cancer Center Windber / Somerset, UPMC Cancer Center Beaver, UPMC / HVHS Cancer Center at The Medical Center, Beaver, UPMC / HVHS Cancer Center - Moon Township, UPMC Cancer Center Kennedy, UPMC Cancer Center at UPMC Mercy, UPMC Cancer Center Sewickley, UPMC Cancer Center Steubenville, UPMC Cancer Center at Weirton Medical Center, Beacon Hospital Cancer Centre, UPMC Whitfield Cancer Centre, Beatty Pointe Village, Hampton Fields Village, Lighthouse Pointe at Chapel Harbor, Seneca Hills Village, Strabane Trails Village, Sugar Creek Station, Vanadium Woods Village, Canterbury Place, Cumberland Crossing at UPMC Passavant, Seneca Manor, Strabane Woods of Washington, Weatherwood Manor, Cranberry Place, Heritage Place, Seneca Place, Sherwood Oaks, UPMC Monroeville Oxford Drive, UPMC Monroeville Surgery Center,

UPMC Monroeville Sleep Medicine Center, UPMC Senior Communities Beatty Pointe Village, UPMC Cancer Centers, Magee Womancare Center – Oakland, Magee Womancare Center – North, Magee Womancare Center – Monroeville, Magee Womancare Center - Pleasant Hills, Magee Womancare Center - South Hills, Women's Specialty Center at the Hillman Cancer Center, UPMC Cancer Centers Natrona Heights location, River Valley Physical Therapy, Russellton Medical Group, Valley Family Medicine, UPMC Monroeville, UPMC Natrona Heights, UPMC South Hills, Monroeville Imaging Center, Cranberry Township and The Center for Inclusion in Health Care (collectively "Health Centers").

15.    Named Defendants affiliated health care facilities and centers include the following: Laura Arnold, M.D. & Barry Tenenouser, M.D. - UPMC, Arthritis and Internal Medicine Associates-UPMC, Associates in Cardiology-UPMC, Eileen Baade, M.D. - UPMC, John D. Bayuk, M.D.-UPMC, Bedford County Pediatric Association - UPMC, Bedford Obstetrical/Gynecological Associates - UPMC, Behavioral Health Associates - UPMC, Capone, Ralph A., M.D. and Associates-UPMC, Century Cardiac Care-UPMC, Chandra, Seetha, Md - UPMC, Chestnut Ridge Family Medicine UPMC, Children's Hospital of Pittsburgh of the UPMC Health System, Clarion Family Practice-UPMC, Clinical Cardiology Associates - UPMC, Concentra-UPMC, L.L.C., Craig Medical Associates - UPMC, Cumberland Crossing - UPMC, Donald G. Klinestiver, Jr. Md & Associates – UPMC, Dr. Darcy Giger & Associates - UPMC, Emlenton Area Family Practice-UPMC, Family Medicine Associates - UPMC, FOOR, Jeffrey L., M.D. Pediatrics - UPMC, Franklin Community Medicine - UPMC, Franklin Park Family Practice - UPMC, Fresenius Medical Care - UPMC, LLC, Gateway Medical Group - UPMC, Gleason Medical Associates-UPMC, Golani Medical Associates - UPMC, Gordon, Gold, Md & Associates - UPMC, Greater Pittsburgh Medical

Associates-UPMC, Greater Pittsburgh Neurosurgical Associates - UPMC, Greenville Medical Center - UPMC, Greenville Surgical Associates - UPMC, Healthfirst Medical Associates-UPMC, Herbert C. Bazron Jr., Md- UPMC, Hermitage Community Medicine - UPMC, Horizon Cardiology-UPMC, Horizon Endocrinology - UPMC, Horizon Neurology - UPMC, Horizon Neurosurgery - UPMC, Horizon Orthopedics - UPMC, Horizon Physiatry - UPMC, Horizon Surgical Associates - UPMC, Hunter, George R., M.D. and Associates-UPMC, Internal Medicine Specialists - UPMC, Internal Medicine-UPMC, James W. Boyle, Md & Associates - UPMC, Jefferson / UPMC Cancer Associates, John, Chantz, Biedrzycki & Associates – UPMC, Jose B. Caballe, Md - UPMC, Kochik Medical Associates - UPMC, Koenig Family Practice - UPMC, Lamb, Michael G. M.D.-UPMC, Latrobe Heart Associates - UPMC, Latterman Family Health Center - UPMC, Lindenbaum, Perryman & Associates - UPMC, Listopad Ciambotti and Lange - UPMC, Love, Zillweger, & Associates - UPMC, Margolis Rheumatology -UPMC, Mathur, Dinesh P., Md - UPMC, Mckeesport Internal Medicine Center - UPMC, Mieczyslaw Weinfeld M.D. - UPMC, Neurological Consultants of Northwestern Pa -UPMC, North Park Optical - UPMC, Northern Area Surgical Associates - UPMC, Northern Medical Associates-UPMC, Northwest Pulmonology - UPMC, Northwest Surgical Associates - UPMC, Northwest Urology - UPMC, P.G.H. Ob/Gyn Associates - UPMC, Palmer, Arnold Pavillion A Member of the UPMC Cancer Centers, Parnassus Medical Associates – UPMC, Partners In Health - UPMC, Penn Plum Family Medicine - UPMC, Pennwood Family Medicine - UPMC, Petrucci Family Health Care-UPMC, Physical Medicine and Rehabilitation Experts - UPMC, Pittsburgh Bariatrics at UPMC St. Margaret, Pittsburgh Internal Medicine Associates - UPMC, Primary Care North Shore - UPMC, Prime Care Medical Associates-UPMC, Pulmonary Consultants-UPMC, Pulmonary, Sleep &

Critical Care Associates - UPMC, Renaissance Family Practice - UPMC, Inc., Russellton Medical Group-UPMC, Saxton Family Practice - UPMC, Scherer Family Medicine-UPMC, Select Specialty Hospital-Pittsburgh/UPMC, Inc., Singh, D., M.D. and Associates - UPMC, Small Wonders at the UPMC, Smg/Santucci - UPMC, Solano & Kokales Internal Medicine Associates -UPMC, St. Clair Hosptial/UPMC Cancer Center Pet/Ct, Stull, Jarvis and Spinola Internal Medicine Associates - UPMC, Suburban East Medical Center-UPMC, Surgical Service Foundation of UPMC, Three Rivers Orthopedic Associates - UPMC, Torres Family Medical - UPMC, Tri-State Diagnostics-UPMC, Tri-State Medical Associates-UPMC, Tri-State Neurosurgical Associates - UPMC, University General Medicine Associates-UPMC, University Internal Medicine - UPMC, University of Pittsburgh and UPMC Medical and Health Sciences Foundation, UPMC, UPMC - Metropolitan Ob/Gyn Associates, UPMC / HVHS Cancer Center, UPMC and the Washington Hospital Cancer Center, UPMC Bedford, UPMC Bedford Memorial, UPMC Bedford Orthopedics, UPMC Behavioral Health Associates, UPMC Behavioral Health Services, UPMC Benefit Management Services, Inc., UPMC Best, UPMC Best Healthcare, UPMC Bipolar Institute, UPMC Braddock, UPMC Braddock Physician Hospital Organization, Inc., UPMC Cancer Centers, UPMC Cancer Centers - Medical Oncology, UPMC Cancer Centers - Radiation Oncology, UPMC Cancer Centers Holding Company, Inc., UPMC Cardiovascular Institute at Passavant, UPMC Cardiovascular Institute Mercy, UPMC Cardiovascular Institute Northwest, UPMC Community Medicine, Inc., UPMC Community Provider Services, UPMC Coverage Products, Inc., UPMC Diversified Services, Inc., UPMC Downtown Practice, UPMC Emergency Medicine, Inc., UPMC Environmental Research Center, UPMC Eye Center, UPMC Eye Center St. Margaret, UPMC For You, UPMC Greater Pittsburgh Ob Gyn,

UPMC Health Benefits, Inc., UPMC Health Network, Inc., UPMC Health Plan, Inc., UPMC Health System, UPMC Health System Residency Program, UPMC Healthy Lifestyle Program, UPMC Heritage Place, UPMC Holding Company, Inc., UPMC Home Health, Shadyside, UPMC Home Medical Equipment, UPMC Horizon, UPMC Horizon Center for Wound Treatment, UPMC Horizon Community Health Foundation, UPMC Horizon Greenville Auxiliary of Greenville, PA, UPMC Horizon Health Plan, UPMC Horizon Transitional Care Center Greenville, UPMC Horizon Transitional Care Center Shenango, UPMC Hospice, UPMC House Physicians, UPMC IMIT's Center, UPMC Institute for Rehabilitation and Research, UPMC Insurance Agency, Inc., UPMC International Health Initiatives, Inc., UPMC Keystone Primary Care - Dr's Ou and Tong, UPMC Keystone Primary Care - Dr. Carter, UPMC Keystone Primary Care - Dr. Klein, UPMC Keystone Primary Care - Dr. Tong, UPMC Keystone Primary Care -Drs. Shetty & Paul, UPMC LCC Regional Pulmonary/Critical Care Medicine, UPMC Lee, UPMC Lee Hospital, UPMC Lee Regional, UPMC Lee Regional-New Florence Care Center, UPMC Lee Transitional Care Unit, UPMC Lifesolutions, UPMC Mckeesport, UPMC Mckeesport Long Term Care Facility, UPMC Mckeesport PHO, UPMC Mckeesport Physicians, Inc., UPMC Mckeesport Worknet, UPMC Mercy Obstetrical & Gynecologic Specialists, UPMC Monroeville Multispecialty Center, UPMC Monroeville Surgery Center, UPMC Northwest, UPMC Northwest Auxiliary, UPMC Northwest Center For Advanced Imaging, UPMC Northwest Center For Cancer, UPMC Northwest Foundation, UPMC Northwest Transitional Care Unit, UPMC Occupational Medicine, Inc., UPMC Passavant, UPMC Passavant Cranberry, UPMC Passavant North Hills MRI, UPMC Passavant Subacute Unit, UPMC Physician Services, UPMC Plaza, Inc., UPMC Presbyterian, UPMC Presbyterian Shadyside, UPMC

Private Duty Services, UPMC Professional Claim Services, UPMC Rehabilitation Hospital, UPMC Senior Communities, Inc., UPMC Senior Living, UPMC Shadyside, UPMC South Side, UPMC Specialty Programs, LLC, UPMC St. Margaret, UPMC St. Margaret Transitional Care Unit, UPMC Work Partners - Allison Park, UPMC Work Partners - Corporate Care Centre, UPMC Work Partners - McKeesport, UPMC Work Partners - Murrysville, UPMC Work Partners - Passavant, UPMC Work Partners - Robinson, UPMC Work Partners - Shadyside, UPMC Work Partners - St. Margarets, UPMC, Transitional Care Unit, UPMC/ Jameson Cancer Center, UPMC/Combinenet Healthcare LLC, UPMC/Conemaugh Cancer Center, UPMC/Jefferson Regional Home Health, LP, UPMC's Emergency Medicine - Jeannette, UPMC's Emergency Medicine - Mckeesport, UPMC's Emergency Medicine - Shadyside, UPMC's Emergency Medicine - St. Clair, UPMC's Emergency Medicine - St. Margaret, UPMC's Emergency Medicine-Braddock, UPMC's Emergency Medicine-Horizon, UPMC's Emergency Medicine-South Side, Valley Family Medicine-UPMC, Venango Internal Medicine - UPMC, Waterdam Family Practice-UPMC, Weigles Hill Family Medicine-UPMC, Western Pennsylvania Surgical Eye Association-UPMC, Winkler Eye Associates-UPMC, Worthington Group, Mcgraw-Edison Company, Zubak, George M., M.D. - UPMC, University of Pittsburgh Medical Center, University of Pittsburgh Medical Center Medical Education Program, University of Pittsburgh Medical Center, South Side Transitional Care Center, University of Pittsburgh Medical Center, St. Margaret Transitional Care Unit, University of Pittsburgh and UPMC Medical and Health Sciences Foundation, University of Pittsburgh Cancer Institute Cancer Services, University of Pittsburgh Cardiovascular Institute, University of Pittsburgh Heart Institute, University of Pittsburgh Medical Center, Seneca Ridge, University of Pittsburgh Medical Center, South

Side Transitional Care Center, University of Pittsburgh Medical Center, St. Margaret Transitional Care Unit University of Pittsburgh Physicians, University of Pittsburgh Physicians, Ellis Practice, Presbyterian-University Health System, Inc., University of Pittsburgh Medical Center System, UPMC Health System of Pittsburgh, PA, (collectively, "Affiliates").

16.     Together the Named Defendants, the Health Centers and the Affiliates are referred to as "UPMC" or "defendants".

17.     UPMC is an enterprise engaged in the operation of a hospital and/or the care of the sick and is a healthcare consortium.

18.     Defendants operate over 104 health care facilities and centers and employ approximately 40,000 individuals.

19.     Defendants constitute an integrated, comprehensive, consolidated health care delivery system, offering a wide range of services.

20.     For example, defendants have centralized supply chain management, financial, computer, payroll and health records systems that are integrated throughout their locations.

21.     Further, upon information and belief, defendants' labor relations and human resources are centrally organized and controlled, including defendants' employment of a Vice President of Human Resources as part of the management team as well as the maintenance of system-wide policies and certain employee benefit plans.

22.     Upon information and belief, defendants share common management, including oversight and management by a senior executive team and board of directors.

23.     Upon information and belief, defendants have common ownership.

24.     As such, defendants are the employer (single, joint or otherwise) of the

Plaintiffs and Class Members and/or alter egos of each other.

25.    Defendants consider themselves a single employer under the FLSA.

26.    Jeffrey A. Romoff is the President and CEO of UPMC.

27.    Upon information and belief, including defendants' admissions, Jeffrey A. Romoff responsibilities include actively managing UPMC.

28.    Upon information and belief, in concert with others, Jeffrey A. Romoff has the authority to, and does, make decisions that concern the policies defendants adopt and the implementation of those policies.

29.    Upon information and belief, in concert with others, Jeffrey A. Romoff has the authority to, and does, make decisions that concern defendants' operations, including functions related to employment, human resources, training, payroll, and benefits.

30.    Upon information and belief, due in part to his role as President, Jeffrey A. Romoff is actively involved in the creation of the illegal policies complained of in this case.

31.    Upon information and belief, due in part to his role as President, Jeffrey A. Romoff actively advises defendants' agents on the enforcement of the illegal policies complained of in this case.

32.    Upon information and belief, due in part to his role as President, Jeffrey A. Romoff actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

33.    Upon information and belief, in concert with others, Jeffrey A. Romoff has the authority to, and does, make decisions that concern the reviewing and counseling of defendants regarding employment decisions, including hiring and firing of Plaintiffs.

34.    Upon information and belief, in concert with others, Jeffrey A. Romoff has the

authority to, and does, make decisions that concern employees' schedules, hours and standard benefit levels.

35.     Upon information and belief, Jeffrey A. Romoff has the authority to, and does, make decisions that concern standard pay scales.

36.     Upon information and belief, Jeffrey A. Romoff has the authority to, and does, make decisions that concern defendants' human resources policies, the resolution issues and disputes regarding policies and their applications, the counsel locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

37.     Upon information and belief, Jeffrey A. Romoff has the authority to, and does, make decisions that concern defendants' employment and human resources records, including the systems for keeping and maintaining those records.

38.     Upon information and belief, Jeffrey A. Romoff has the authority to, and does, make decisions that concern training and education functions across UPMC.

39.     Upon information and belief, Jeffrey A. Romoff has the authority to, and does, make decisions that concern the type and scope of training employees must attend as well as any compensation they receive for attending training.

40.     Upon information and belief, Jeffrey A. Romoff has the authority to, and does, make decisions that concern payroll functions across UPMC.

41.     Upon information and belief, Jeffrey A. Romoff has the authority to, and does, make decisions that concern the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll

checks.

42.   Upon information and belief, Jeffrey A. Romoff has the authority to, and does, make decisions that concern benefit plans across UPMC.

43.   Upon information and belief, Jeffrey A. Romoff has the authority to, and does, make decisions that concern the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

44.   Because Jeffrey A. Romoff has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of Plaintiffs, and control the drafting and enforcement of the policies which govern the hiring and firing of employees, Jeffrey A. Romoff has the power to hire and fire employees.

45.   Because Jeffrey A. Romoff has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Jeffrey A. Romoff supervises and controls employees' work schedules and/or conditions of employment.

46.   Because Jeffrey A. Romoff has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Jeffrey A. Romoff determines the rate and method of employees' payment.

47.     Because Jeffrey A. Romoff has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Jeffrey A. Romoff maintains employees' employment records.

48.     Because Jeffrey A. Romoff provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of the defendants' business functions, particularly in regards to the employment of Plaintiffs.

49.     Because Jeffrey A. Romoff is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, he actively participates in the violations complained of in this action.

50.     Based upon the foregoing, Jeffrey A. Romoff is liable to Plaintiffs because of his active role in operating the business, his status as an employer, and/or according to federal law.

51.     Gregory Peaslee is the Senior Vice President of Human Resources of UPMC.

52.     Upon information and belief, Gregory Peaslee is responsible for, provides direction and control over, and is authorized to direct all aspects of human resources functions across UPMC.

53.     Upon information and belief, due in part to his role of overseeing human

resources, training and education, and payroll and commission services, in concert with others, Gregory Peaslee is actively involved in the creation of the illegal policies complained of in this case.

54.     Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Gregory Peaslee actively advises defendants' agents on the enforcement of the illegal policies complained of in this case.

55.     Upon information and belief, due in part to his role of overseeing human resources, training and education, and payroll and commission services, in concert with others, Gregory Peaslee actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO.

56.     Upon information and belief, Gregory Peaslee, is actively involved in reviewing and counseling defendants regarding employment decisions, including hiring and firing of Plaintiffs.

57.     Upon information and belief, Gregory Peaslee, is actively involved in decisions that set employees' schedules, hours and standard benefit levels.

58.     Upon information and belief, Gregory Peaslee, is actively involved in decisions that set standard pay scales.

59.     Upon information and belief, Gregory Peaslee, is actively involved in the determination and drafting of human resources policies, the resolution of issues and disputes regarding policies and their application, the counseling locations receive regarding human resources issues, and communications with employees about human resources issues and policies.

60.    Upon information and belief, Gregory Peaslee, is actively involved in defendants' employment and human resources records, including the systems for keeping and maintaining those records.

61.    Upon information and belief, Gregory Peaslee, is actively involved in training and education functions across UPMC.

62.    Upon information and belief, Gregory Peaslee, is actively involved in determining the type and scope of training employees must attend as well as any compensation they receive for attending training.

63.    Upon information and belief, Gregory Peaslee, is actively involved in payroll functions across UPMC.

64.    Upon information and belief, Gregory Peaslee, is actively involved in the system for keeping and maintaining employees' payroll records, the timing and method with which payment is conveyed to employees, and the manner and method in which employees receive payroll information including their payroll checks.

65.    Upon information and belief, Gregory Peaslee, is actively involved in benefit plans across UPMC.

66.    Upon information and belief, Gregory Peaslee, is actively involved in determining the type and scope of benefits available to employees, the method and manner in which information regarding those plans is conveyed to employees, and the system for keeping and maintaining records related to employees' benefits.

67.    Because Gregory Peaslee has authority to hire or fire employees, provide and direct support regarding human resources issues, including the hiring and firing of employees, and control the drafting and enforcement of the policies which govern the hiring and firing of

-17-

employees, Gregory Peaslee has the power to hire and fire employees.

68.     Because Gregory Peaslee has authority to establish work schedules and/or conditions of employment, provide and direct support regarding human resources issues, including work schedules and/or conditions of employment, control the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, establish the type and scope of training employees receive, and administer employees' benefit programs, including standard benefit levels and the type and scope of benefits available to employees, Gregory Peaslee supervises and controls employees' work schedules and/or conditions of employment.

69.     Because Gregory Peaslee has authority to establish employees' rate and method of payment and centrally control payroll functions, including standard pay scales, the provision of payroll information, and the timing of payment, Gregory Peaslee determines the rate and method of employees' payment.

70.     Because Gregory Peaslee has authority with respect to defendants' centralized records, including a database regarding employees' employment records, and systems for keeping and maintaining payroll, benefits, and other employment-related records, Gregory Peaslee maintains employees' employment records.

71.     Because Gregory Peaslee provides day-to-day support regarding human resources issues, including employees' work schedules and/or conditions of employment, controls the drafting and enforcement of the policies which govern employees' schedules and/or conditions of employment, and administers employees' benefit programs, he is affirmatively, directly, and actively involved in operations of defendants' business functions, particularly in regards to the employment of Plaintiffs.

-18-

72.     Because Gregory Peaslee is actively involved in the creation of the illegal policies complained of in this case, actively advises defendants' agents on the enforcement of the illegal policies complained of in this case and actively ensures defendants' compliance or non-compliance with federal law, including the requirements of the FLSA, ERISA and RICO, Gregory Peaslee actively participates in the violations complained of in this action.

73.     Based upon the foregoing, Gregory Peaslee is liable to Plaintiffs because of his active role in operating the business, his role in the violations complained of in this action, his status as an employer, and/or otherwise according to federal and state law.

74.     Upon information and belief, defendants maintain ERISA plans known as the UPMC 401A Retirement Savings Plan, UPMC 403B Retirement Savings Plan and UPMC Basic Retirement Plan.

**B.      Plaintiffs**

*Named Plaintiffs*

75.     At all relevant times, Karen Camesi, Erin O'Connell, Lori Shaffer and Dinah Baker ("Plaintiffs") were employees under the FLSA, employed within this District and reside within this District.

*Class Members*

76.     The Class Members are those employees of defendants who were suffered or permitted to work by defendants and not paid their regular or statutorily required rate of pay for all hours worked ("Class Members").

## FACTUAL BACKGROUND

77.     UPMC is one of the largest health care providers in Western Pennsylvania.

78.     As discussed below, defendants maintained several illegal pay policies that

denied Plaintiffs and Class Members compensation for all hours worked, including applicable premium pay rates.

***Meal Break Deduction Policy***

79.    Pursuant to defendants' "Meal Break Deduction Policy," defendants computerized time-keeping system automatically deducts one half-hour from employees' paychecks each day for a meal break even though   defendants fail to ensure that employees were relieved from duty for a meal break and employees did in fact perform work during those breaks and were not paid for that time.

80.    Defendants maintain the Meal Break Deduction Policy throughout its facilities and centers.

81.    Plaintiffs and Class Members allow defendants to operate on a 24/7 basis, and in doing so, Plaintiffs and Class Members often perform compensable work for defendants during their uncompensated meal breaks.

82.    Defendants do not prohibit Plaintiffs and Class Members from working during their meal breaks and do not have rules against such work.

83.    Although the defendants' policy deducts 30 minutes of pay each shift, defendants expect Plaintiffs and Class Members to be available to work throughout their shifts and consistently requires its employees to work during their unpaid meal breaks.

84.    Plaintiffs and Class Members are not relieved by another employee when their break comes, or asked to leave their work location.

85.    Plaintiffs and Class Members are expected to eat without any change in demands from patients or relief by additional staff.

86.    Further, all defendants' employees are required to respond to pages whether

on break or not, as well as requests by patients, co-workers and management.

87.     Further, defendants for years have been reducing staffing which imposes larger and larger burdens on Plaintiffs and Class Members to immediately respond to the defendants' needs regardless of whether Plaintiffs and Class Members are on a "meal break."

88.     Defendants know that Plaintiffs and Class Members perform work during their meal breaks.

89.     For example, Plaintiffs and Class Members perform the work for the defendants, on defendants' premises, in plain sight, and at management's request.

90.     Defendants' management have repeatedly observed Plaintiffs and Class Members working though their unpaid meal breaks.  Defendants' management has gone so far as to direct Plaintiffs and Class Members to work during their unpaid meal breaks even though defendants' management knew that they would not be able to have a full meal break.

91.     Plaintiffs and Class Members had conversations with defendants' managers in which they discussed how they were working through their meal periods and were not getting paid for such work.

92.     When questioned by employees about the Meal Break Deduction Policy, the defendants affirmatively stated that the employees could not be paid for such time, even though defendants knew such time was compensable.

93.     Further, given the demands of the health care industry and short staffing, defendants' management knew that to get the tasks done they assigned to Plaintiffs and Class Members, when they needed to get done, Plaintiffs and Class Members had to work through their meal breaks even during times they were not paid for their meal breaks.

94.     Even though defendants know its employees are performing such work,

defendants fail to compensate their employees for such work.

95.     All Plaintiffs and Class Members are subject to the Meal Break Deduction Policy and are not fully compensated for work they perform during breaks, including, without limitation, hourly employees working at UPMC's facilities and centers, such as secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, nurses aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, nurses aides, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists and other health care workers.

96.     Employees are entitled to compensation for all time they performed work for defendants, including during their meal breaks.

97.     In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent working during meal breaks often would included work that should have been calculated at applicable premium pay rates.

98.     All Plaintiffs and Class Members subject to the Meal Break Deduction Policy are members of Subclass 1.

**Twenty Minute Break Policy**

99.     According to their handbook, defendants consider meal breaks lasting at least 20 minutes as a full unpaid 30 minute meal break ("Twenty Minute Break Policy").

100.    This policy facially violates the FLSA and the United States Department of Labor's regulation regarding meal breaks. *See,* 29 C.F.R. § 785.19

101.    Plaintiffs and Class Members subject to the Twenty Minute Break Policy are

members of Subclass 2.

*Meal Break Differential Policy*

102.   Further, employees experience a deduction of 30 minutes even if the meal break lasts less than 30 minutes.

103.   In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent working during meal breaks often would included work that should have been calculated at applicable premium pay rates.

104.   Though meal breaks lasting less than 30 minutes need to be compensated, even if defendants' 20 minute threshold is found appropriate, Plaintiffs and Class Members are entitled to compensation for anytime spent working over the 20 minute threshold up to the 30 minutes actually deducted ("Meal Break Differential Policy").

105.   Plaintiffs and Class Members subject to the Meal Break Differential Policy are members of Subclass 3.

*Unpaid Preliminary and Postliminary Work Policy*

106.   UPMC suffered or permitted Plaintiffs and Class Members to perform work before and/or after the end of their scheduled shift.

107.   However defendants failed to pay Plaintiffs and Class Members for all time spent performing such work as a result of defendants' policies, practices and/or time recording system (the "Unpaid Preliminary and Postliminary Work Policy").

108.   In addition, if Plaintiffs' and Class Members' hours had been properly calculated, the time spent, performing work before and/or after their shifts often would have included work that should have been calculated at applicable premium pay rates.

109.   All Plaintiffs and Class Members subject to the Unpaid Preliminary and

Postliminary Work Policy are members of Subclass 4.

***Unpaid Training Policy***

110.     Defendants also suffered or permitted Plaintiffs and Class Members to attend compensable training programs.

111.     However, defendants fail to pay employees for all time spent attending such training sessions (the "Unpaid Training Policy").

112.     In addition, if Plaintiffs' and Class Members hours had been properly calculated, the time spent attending training often would have included work that should have been calculated at applicable premium pay rates.

113.     All Plaintiffs and Class Members subject to the Unpaid Training Policy are members of Subclass 5.

***Failure To Include All Remuneration Policy***

114.     Defendants also improperly calculated the overtime rate for Plaintiffs and Class Members.

115.     For example, defendants failed to include all remuneration such as bonuses and shift differentials in the calculation of Plaintiffs' and Class Members' regular rate of pay used to calculate their overtime rate ("Failure To Include All Remuneration Policy").

116.     All Plaintiffs and Class Members subject to the Failure To Include All Remuneration Policy are members of Subclass 6.

117.     Collectively, the Meal Break Deduction Policy, the Twenty Minute Break Policy, the Meal Break Differential Policy, the Unpaid Preliminary and Postliminary Work Policy, the Unpaid Training Policy, and the Failure To Include All Remuneration Policy, are referred to herein as the "Unpaid Work Policies."

*Additional Allegations*

118.    Plaintiffs and Class Members were subject to defendants' time keeping policies which fail to ensure that employees are compensated for all hours worked, including pursuant to the Unpaid Work Policies.

119.    Even though UPMC knows its employees are performing such work, UPMC fails to compensate its employees for such work

120.    Defendants' practice is to be deliberately indifferent to these violations of the statutory wage and overtime requirements.

121.    Through the paystubs and payroll information it provided to employees, UPMC deliberately concealed from its employees that they did not receive compensation for all the work they performed and mislead them into believing they were being paid properly.

122.    Further, by maintaining and propagating the illegal Unpaid Work Policies, defendants deliberately misrepresented to Plaintiffs and Class Members that they were being properly paid for time worked, even though Plaintiffs and Class Members were not receiving pay for all time worked including applicable premium pay.

123.    The defendants engaged in such conduct and made such statements to conceal from the Plaintiffs and Class Members their rights and to frustrate the vindication of the employees' federal rights.

124.    As a result, employees were unaware of their claims.

125.    Further, because of defendants' pay policies, defendants' improperly rounded Plaintiffs' and Class Members' hours of work.

126.    This failure to pay overtime as required by the FLSA is willful.

127.    Defendants, however, at all times intended to violate applicable federal laws

by failing to pay Plaintiffs and Class Members their regular or statutorily required rate of pay for all hours worked including applicable premium pay.

128.    Among the relief sought, Plaintiffs and Class Members seek injunctive relief to prevent UPMC from continuing the illegal policies and practices perpetuated pursuant to the Unpaid Work Policies.

129.    Defendants sponsor pension plans including UPMC 401A Retirement Savings Plan, UPMC 403B Retirement Savings Plan and UPMC Basic Retirement Plan (the "Plans") for its employees.

130.    Defendants failed to keep accurate records of all time worked by Class Members.  By failing to keep such records, defendants' records are legally insufficient to determine benefits.

131.    Defendants failed to credit or even investigate crediting overtime pay as compensation used to determine benefits to the extent overtime may be included as compensation under the Plans.  Defendants, while acting as fiduciaries exercising discretion over the administration of the Plans, breached their duties to act prudently and solely in the interests of Plans' participants by failing to credit them with all of the hours of service for which they were entitled to be paid, including overtime to the extent overtime may be included as compensation under than Plans, or to investigate whether such hours should be credited.  Under ERISA, crediting hours is a fiduciary function, independent of the payment of wages, necessary to determine participants participation vesting and accrual of rights.

132.    As used in this Complaint, "mailed" means: (1) placing in any post office or authorized depository for mailed matter, any matter or thing to be delivered by the United States Postal Service; (2) causing to be deposited any matter or thing to be delivered by any

private or commercial interstate carrier; (3) taking or receiving therefrom any such matter or thing; and/or (4) knowingly causing to be delivered by any such means any such matter.

133.    Plaintiffs and Class Members allege that Defendants devised, intended to devise, and carried out a scheme to cheat Plaintiffs and Class Members out of their property and to convert Plaintiffs' and Class Members' property, including their wages and/or overtime pay (the "Scheme"). Defendants' Scheme consisted of illegally, willfully and systematically withholding or refusing to pay Plaintiffs and Class Members their regular or statutorily required rate of pay for all hours worked in violation of federal law, as described previously in this Complaint.

134.    Defendants' Scheme involved the employment of material misrepresentations and/or omissions and other deceptive practices reasonably calculated to deceive Plaintiffs and Class Members. The Scheme involved depriving Plaintiffs and Class Members of their lawful entitlement to wages and overtime.

135.    In executing or attempting to execute the Scheme and to receive the financial benefits of the Scheme, defendants repeatedly mailed payroll checks, either directly to Plaintiffs and Class Members or between defendants' business locations. These mailings occurred on a regular basis and more than 100 such mailings occurred in the last 10 years.

136.    The payroll checks were false and deceptive because they mislead Plaintiffs and Class Members about the amount of wages to which they were entitled, as well as their status and rights under the FLSA. Plaintiffs and Class Members relied to their detriment on the misleading payroll checks that defendants mailed and those misleading documents were a proximate cause of Plaintiffs' and Class Members' injuries.

137.    Defendants' predicate acts of mailing the misleading payroll checks in

furtherance of their Scheme constitute a pattern of conduct unlawful pursuant to 18 U.S.C. § 1961(5) based upon both the relationship between the acts and continuity over the period of time of the acts.  The relationship was reflected because the acts were connected to each other in furtherance of the Scheme.  Continuity was reflected by both the repeated nature of the mailings during and in furtherance of the Scheme and the threat of similar acts occurring in the future.  The threat was reflected by the continuing and ongoing nature of the acts.

138.    Defendants' predicate acts were related, because they reflected the same purpose or goal (to retain wages and overtime pay due to Plaintiffs and Class Members for the economic benefit of defendants and members of the enterprise); results (retention of wages and overtime pay); participants (defendants and other members of the enterprise); victims (Plaintiffs and Class Members); and methods of commission (the Scheme and other acts described in the Complaint).  The acts were interrelated and not isolated events, since they were carried out for the same purposes in a continuous manner over a substantial period of time.

139.    At all relevant times, in connection with the Scheme, defendants acted with malice, intent, knowledge, and in reckless disregard of Plaintiffs' and Class Members' rights.

140.    Each of the Plaintiffs and Class Members is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1964.

141.    Each defendant is a "person" within the meaning of 18 U.S.C. §§ 1961(3) and 1962(c).

142.    Defendants were members of an "enterprise" under 18 U.S.C. §§ 1961(4) and 1962(a), which was engaged in or the activities of which affected interstate and foreign commerce.

143.    Each defendant received income from a pattern of conduct unlawful under RICO, in which defendants participated through continuous instances of providing Plaintiffs and Class Members with misleading documents which defendants mailed and upon which Plaintiffs and Class Members relied to their detriment.

144.    Plaintiffs and Class Members were injured in their business and property under 18 U.S.C. § 1964(c) by reason of defendants' commission of conduct which was unlawful under RICO.

145.    Plaintiffs and Class Members were not classified as exempt employees because hourly employees do not fall under one of the enumerated exemptions under the FLSA.

## FIRST CAUSE OF ACTION
### *FLSA*

146.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

147.    Defendants willfully violated their obligations under the FLSA and are liable to Plaintiffs and Class Members.

## SECOND CAUSE OF ACTION
### *ERISA—Failure to Keep Accurate Records*

148.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

149.    Class Members bring these claims under 29 U.S.C. § 1132(a)(3), which confers on plan participants the right to bring suit to enjoin any violation of ERISA § 1059(a)(1).

150.    Defendants failed to keep accurate records of all time worked by Class Members.  By failing to keep such records, defendants' records are legally insufficient to

determine benefits  Defendants failed to keep records "sufficient to determine the benefits due or which may become due" under the terms of the Plan as required by ERISA § 209(a)(1), 29 U.S.C. § 1059(a)(1).

## THIRD CAUSE OF ACTION
### *ERISA—Breach of Fiduciary Duty*

151.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

152.    Defendants breached their fiduciary duties under 29 U.S.C. § 1104(a)(1).

## FOURTH CAUSE OF ACTION
### *RICO*

153.    Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

154.    Plaintiffs and Class Members bring these claims under 18 U.S.C. § 1964(c), which confers on private individuals the right to bring suit for any injury caused by a violation of 18 U.S.C. § 1962.

155.    Defendants' conduct, and the conduct of other members of the enterprise, injured Plaintiffs and Class Members by refusing to pay their regular or statutorily required rate of pay for all hours worked.  Defendants conducted or participated, directly or indirectly, in the conduct of the enterprise's affairs through a pattern of racketeering activity, by devising a Scheme to obtain Plaintiffs' and Class Members' property by means of false or fraudulent representations, at least some of which were made in the misleading payroll checks which defendants mailed.

## FIFTH CAUSE OF ACTION
### *Estoppel*

156.   Plaintiffs and Class Members reallege the above paragraphs as if fully restated herein.

157.   Defendants are estopped from asserting statute of limitations defenses against Plaintiffs and Class Members.

**WHEREFORE,** Plaintiffs and Class Members demand judgment against defendants in their favor and that they be given the following relief:

(a)   an order preliminarily and permanently restraining defendants from engaging in the aforementioned pay violations;

(b)   an award of the value of Plaintiffs' and Class Members unpaid wages, including fringe benefits;

(c)   liquidated damages under the FLSA equal to the sum of the amount of wages and overtime which were not properly paid to Plaintiffs and Class Members;

(d)   an award of reasonable attorneys' fees, expenses, expert fees and costs incurred in vindicating Plaintiffs' and Class Members rights;

(e)   an award of pre- and post-judgment interest; and

(f)   such other and further legal or equitable relief as this Court deems to be just and appropriate.

## JURY DEMAND

Plaintiff demands a jury to hear and decide all issues of fact.

Dated: April 1, 2009

DOLIN, THOMAS & SOLOMON LLP

By: _____

J. Nelson Thomas, Esq.
Justin M. Cordello, Esq.
*Attorney for Plaintiffs and Class Members*
693 East Avenue
Rochester, New York 14607
Telephone:  (585) 272-0540
nthomas@theemploymentattorneys.com
jcordello@theemploymentattorneys.com