# Exhibit B

The Federal Judicial Center is the education and research agency for the federal courts. Congress created the FJC in 1967 to promote improvements in judicial administration in the courts of the United States. This site contains the results of Center research on federal court operations and procedures and court history, as well as selected educational materials produced for judges and court employees.

## - Publications & videos

## - Federal judicial history

- Biographies of federal judges since 1789
- Histories of individual courts
- Landmark legislation

## - Educational programs & materials

- State-federal judicial education programs
- Inside the Federal Courts orientation site
- Resources for managing capital cases
- Materials on electronic discovery
- Resources on courtroom technology

contact webmaster
privacy and security notice

### The Federal Judicial Center's "Illustrative" Forms of Class Action Notices

At the request of the Subcommittee on Class Actions of the U.S. judicial branch's Advisory Committee on the Federal Rules of Civil Procedure, the Federal Judicial Center developed illustrative notices of proposed class action certification and settlement. The securities and products liability notices deal with combined notices of class certification and settlement. The employment discrimination notices deal with a class certified for litigation and trial, not settlement. These notices are designed to illustrate how attorneys and judges might comply with a change to Federal Rule of Civil Procedure 23(c)(2)(B). The change, effective December 1, 2003, says that class action notices "must concisely and clearly state in plain, easily understood language" specific information about the nature and terms of a class action and how it might affect potential class members' rights.

For each of three hypothetical cases (one dealing with securities law claims, one with products liability claims, and one with employment discrimination claims), we present below a long form ("Full Notice") and a one-page form ("Publication Notice"). For the securities and products liability class actions, we also include a summary statement to use on a mailing envelope ("Language for Envelope"). For the securities notices, in January 2005 we replaced the original notices with a modified notice that responds more directly to the requirements of the Private Securities Litigation Reform Act (PSLRA). The revised securities notices presented below include a new cover letter in a format designed to disclose the required PSLRA information in one short document. The product liability and employment notices have not been changed. Those forms follow:

Securities class action certification and settlement: full notice
Securities class action certification and settlement: publication notice
Securities class action certification and settlement: publication notice (Spanish-language version)
Securities class action: language for envelope
Securities class action: PSLRA cover letter

Products liability class action certification and settlement: full notice
Products liability class action certification and settlement: full notice (Spanish-language version)
Products liability class action certification and settlement: publication notice

- for construction workers
- for homeowners

Products liability class action certification and settlement: language for envelope

- for construction workers
- for homeowners

Employment discrimination class action certification: full notice
Employment discrimination class action certification: publication notice

### Overview of methodology

We began this project by studying empirical research and commentary on the plain language drafting of legal documents. We then tested several notices from recently closed class actions by presenting them to nonlawyers, asking them to point out any unclear terms, and testing their comprehension of various subjects. Through this process, we identified areas where reader comprehension was low. We found, for example, that nonlawyers were often confused at the outset by use of the terms "class" and "class action." Combining information from the pilot test with principles gleaned from psycholinguistic research, we drafted preliminary illustrative class action notices and forms. We then asked a lawyer-linguist to evaluate them for readability and redrafted the notices in light of his suggestions.

We then tested the redrafted securities and products liability notices before focus groups composed of ordinary citizens from diverse backgrounds. This testing explored recipients' willingness to open and read a notice as well as their ability to comprehend and apply the information contained in a notice.

We tested the effectiveness of the redrafted securities notice by conducting a survey comparing the Center's

redrafted illustrative plain language notice with the best comparable notice we could find from closed securities class action cases. Using objective comprehension measures, we found that participants who received the Center's plain language notice exhibited significantly higher comprehension than participants who received the comparison notice.

In August 2001, we posted to the FJC Website the yet-again redrafted securities and products liability notices and requested public comments. We subsequently revised the notices' design and wording, incorporating comments and suggestions received and using the assistance of additional experts. In November 2003 we added the employment notices.

(For more detailed information on the methodology involved in our research and drafting prior to the 2001 posting, click here)

### Notes for use by attorneys and judges

We designed the illustrative forms of notice posted here to demonstrate ways that drafters can use clear, simple, "plain language" and design in class action notices. In an actual case, attorneys and judges can adapt the illustrative notice to the unique factual, legal, and procedural circumstances of their case.

For each type of illustrative notice posted here, we drafted a detailed "full" notice that an attorney might mail to known class members, post to a Web site, or otherwise provide to class members. We also drafted a publication notice and language that might be used on the outside of a mailing envelope. The products liability notice, based on a hypothetical asbestos personal injury settlement, has two target audiences: homeowners and construction workers. Therefore, we prepared two separate publication notices, both of which are included under the link to "Products Liability class action: Publication Notice."

Effective notice to a class may require translation of the English-language notice into languages used by a substantial portion of the class members. To call attention to this need and to illustrate its form in two types of notices, we translated into Spanish the securities class action publication notice and the products liability class action full notice.

### Acknowledgments

We thank all the organizations and individuals who provided us with advice and comments. We wish to specifically acknowledge the class action notice drafting, design, and communications expertise provided by Todd B. Hilsee, of Hilsoft Notifications, Philadelphia, Pa, and the legal writing and plain-language expertise provided by Terri R. LeClercq, Ph.D. of the University of Texas School of Law, Austin, Tex. During the rulemaking process, both made their interest in helping known to the Advisory Committee, which referred them to the Center. Their significant and extensive pro bono services have enhanced the work done for the Advisory Committee. We also acknowledge the Spanish-language expertise of Abby Dings, University of Texas, Austin, Tex.

**Detailed discussion of methodology**

**Lawyer-linguist's recommendations**
Professor Lawrence M. Solan of Brooklyn Law School, a lawyer with a Ph.D. in linguistics, reviewed earlier drafts of the illustrative notices and suggested ways to enhance the "plain language" effect. His review included

- analyzing how sections are organized in terms of overall ordering of the sections and implicit statements of hierarchy in the ordering of claimants' options,
- checking to see that the formatting is easy to read and that the notice highlights statements that call for action, and
- reviewing the length of sentences and use of passive voice, nominalized verbs, and other modes of expression that may decrease comprehension.

Professor Solan's recommendations included

- using topic headings in question form,
- rearranging materials to correspond more exactly with section headings, and
- using the personal "you" rather than third-person references to "claimants."

**Focus group methods and findings**
We conducted four focus groups in February and March 2001. We contracted with Nicole Yakatan of Yakatan Focus Group Moderation and Market Research to moderate the groups and prepare detailed findings.

She recruited focus-group participants from a wide range of nonmanagerial occupations in the Baltimore metropolitan area. Each participant had at least a high school education and no more than a college degree. Each group had six to nine participants, an appropriate number for this type of qualitative research.

We explored reactions to notices and asked about changes that might improve comprehension of, and motivation to read, the notices. We tested the outside packaging, inside layout, organizational structure, and language of the notices. We also tested comprehension aids, such as a chart listing claimants' options, a question-and-answer format for the notice text, and color-coded response forms.

Participants examined two hypothetical class action notices, one about exposure to products containing asbestos and the other about claims of fraud in the purchase of stock. We first asked each focus group participant to read either a full nine-page to ten-page class action notice or a three-page to four-page summary of the notice. They then answered a few written questions about the content before the group discussed the notice. We then gave individual participants either a full notice or a summary--whichever one they had not yet seen--for comparison. We observed uneasiness with the legal nature of the documents regardless of the first document presented. Most people perceived both the notice as well as the summary to be "long" or "complicated" and wanted to set them aside to read later. Participants' estimates of time they would need to study the document were basically the same whether it was the summary or the full notice.

We found that converting the notice to plain language is not the only way to improve communications with class members. Our focus group experience tells us that attorneys and judges can significantly improve class members' motivation to read and comprehend class action notices by changing the language, organizational structure, format, and presentation of the notice. Even small changes in the format and presentation of the notice, such as using a cover letter or caption or colored forms, appeared to increase a reader's motivation to read and understand the notice.

When focus group members played the role of prospective class members who had received a class action notice, their own attitudes and perceptions about class action lawsuits, attorneys, and even justice appeared to influence their ability to comprehend the specifics of class action notices. Such factors appeared to drive the way people approached the issues of whether and how to read a notice. For the most part, participants' attitudes about

and comprehension of our notices and summaries revealed broad acceptance of the structure and content of the material we presented. The clarity and logic of the notices seemed to enhance their ability to participate in the discussion.

Most focus group participants displayed a very general knowledge of class action lawsuits but were relatively unfamiliar with class action notices. Their preconceived notion of a notice was almost totally negative; they expected to find wordy legalese that would be difficult or impossible to understand. They were not eager to tackle any type of legal document and said they are flooded daily with "junk mail."

A threshold challenge is to get potential class members to open and read a class action notice. Many focus group members expected a professional-looking package, which they described as a standard white, flat envelope, ideally with the return address of the court or a law office and, perhaps, a logo. Several members indicated that a postage stamp on the envelope (rather than a metered mail indicator) added a personal touch and would encourage recipients to open the envelope. Most participants reacted negatively to "junk mail" lingo on the envelope, such as "You may be entitled to ..." Generally, participants preferred direct declarations of the envelope's contents such as "Notice of Proposed Class Action Settlement." Participants said that a U.S. district court return address would motivate them to open the envelope more than would an attorney's return address or a return address using the term "Class Action Administrator." Part of the motivation to open a notice from the court arose out of fear of the consequences of not opening it.

Another challenge is to convince people to read and act on the class action notice rather than throw it away. A first impression must persuade readers that they may have a stake in the class action and that they will be able to comprehend the notice. One of the most significant findings from the focus groups is that a short summary of the class action did not automatically improve motivation or comprehension in comparison to a full notice. In fact, most participants expressed a preference for more complete information, as long as it is readable and not excessively long.

Participants showed an ability to comprehend the topics in the full notice more accurately. The notices tested appeared to succeed on those counts, primarily as a result of the following elements:

- Non-legal, plain language throughout,
- Concise opening page that makes specific points,
- Detailed table of contents,
- Question-and-answer format,
- Summary chart of important information, and
- Color-coded response forms.

Many factors, including the complexity and emotional weight of the subject (for example, asbestos versus corporate stocks) appeared to affect participants' understanding of the notice and their approach to it.

### Survey

As a further test of whether notices in the style of the Center's draft notices would improve comprehension, we conducted a survey of stock owners. We compared the participants' comprehension of the Center's securities class action notice with their comprehension of an "original" notice that had been used in a closed case. Based on our pilot test, we selected the original notice that was the clearest of the securities notices we had reviewed. Given funding limitations, we could not draw a random sample and instead located a nonrandom group of stockowners by using lists voluntarily provided by investment clubs identified through the Internet. Participants who received the Center-designed notice had significantly higher comprehension than participants who received the comparison notice.