**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN CAMESI, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: 09-CV-85 |
| | ) | |
| v. | ) | Magistrate Judge Bissoon |
| | ) | |
| UNIVERSITY OF PITTSBURGH | ) | |
| MEDICAL CENTER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS'**
**MOTION FOR EXPEDITED COLLECTIVE ACTION NOTIFICATION**

Plaintiffs have moved (Doc No. 4) for Expedited Collective Action Notification, asking

this Court to conditionally certify a class comprised of "all current and former hourly employees

of the defendants whose pay was subject to an automatic deduction even when employees

performed compensable work and/or who were subject to defendants' policy which deducted for

a full meal break after only 20 minutes and/or who were subject to a deduction for 30 minutes

even though their meal break lasted less than 30 minutes but over 20 minutes." (Proposed Order

¶ 1)  Plaintiffs' Motion also seeks approval of a proposed notice to be communicated to this

"class" using various methods of notice.

Defendants oppose this Motion and submit the following Brief in opposition.

***PRELIMINARY STATEMENT***

Four nurses who worked or work at five locations[1] seek, on an expedited basis without

any discovery into the nature and *bona fides* of their employment situations and claims, to obtain

---

[1] Camesi's "Affirmation" states that she worked at Magee Hospital until July 2008 as a registered nurse.  (Nelson
Affirmation Exh. G ¶2); O'Connell is a registered nurse working in Corporate Services, (*Id.* Exh. H ¶2); Shaffer was

the assistance of this Court in sending out an "invitation to sue" to as many as thirty thousand[2]

hourly-paid employees of 23 different corporate entities, who work at nearly a thousand different

locations in Western Pennsylvania.  (Complaint ¶¶ 14, 15)  The four nurses claim to be situated

similarly to, as described in the Complaint: "secretaries, housekeepers, custodians, clerks,

porters, nurses aids, administrative assistants, anesthetists, clinicians, medical coders, medical

underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors,

professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior

research associates, operating room coordinators, surgical specialists, admissions officers,

student nurse techs, trainers, transcriptionists, and other health care workers."  (Complaint ¶ 95)

        If one reviews the 14 seven-page, "cookie-cutter" Affirmations filed to support the

Motion which is before this Court, this diverse group does not have in common a single

allegedly unlawful practice, even if all the Affirmations were true.  The only thing that these four

nurses have in common with the other thirty thousand hourly employees that they seek to invite

to participate in this lawsuit is that the system used to track their time and attendance, the

KRONOS system, automatically deducts for meals after five hours worked.  However, that

system is entirely lawful and cannot legitimately form the basis for conditional certification of a

collective action under the  Fair Labor Standards Act ("FLSA").

        The alleged "tie that binds" the nurses'[3] claims is that, due to the exigencies of treating ill

patients, they had to sometimes work during their meal breaks, were observed doing so by

supervisors and were not paid.  The very nature of these alleged meal break claims renders them

ill-suited for collective action treatment because of the highly individualized nature of such

---

a Registered Nurse who worked at Magee and Presbyterian-Shadyside Hospitals (*Id.* Exh. I ¶2); and Baker was a
licensed practical nurse for Montefiore Hospital and Presbyterian-Shadyside. (Id. Exh. J ¶2)
[2] The various UPMC entities employ approximately 30,000 non-exempt employees, all of whose time and
attendance is tracked on the KRONOS system as alleged in the complaint.
[3] All fourteen of the affiants are nurses – thirteen registered and one LPN.

claims.  More importantly, for reasons discussed below, this allegation does not state a claim for violation of the FLSA.  In fact, none of the Affirmations disclose a single violation of the FLSA. It would, therefore, be inappropriate at this time to conditionally certify a collective action of any size or composition based upon the evidence offered up by plaintiffs to support their Motion.

Even if one could infer a violation of the FLSA from the Affirmations filed by the nurses, a conditional certification must be based upon some competent evidence that there are others who are similarly situated with respect to the alleged violation.  Plaintiffs' offer nothing more than vague, conclusory affirmations – each identical to the next – that in no way demonstrate that they share a common right to recovery with the rest of defendants' vast and multifaceted workforce.  Courts faced with claims of this type have limited conditional certifications and notice to a class of employees that is actually shown by the evidence to have something relevant in common with the named plaintiffs, both in terms of the nature of their jobs and their locations. In this case, that would be nurses having patient care responsibilities at the hospitals for which the named plaintiffs worked.

It bears mentioning too, at the outset of this Brief, that plaintiffs' plea of urgency, such that principled decision-making should give way to haste, is belied by their own leisurely pace. Several dozen of the opt-in claims filed with this court were signed more than nine months before the Complaint was filed.  If the named plaintiffs were really so concerned about the claims of others "dying daily," they surely would not have waited until some tactical quorum was achieved to file this lawsuit.  The defendants should not be made to sacrifice reasoned justice when plaintiffs have demonstrated no sense of urgency themselves.

Defendants also object to the form of notice proposed to be sent by plaintiffs and to the various proposed methods of notifying class members, all as addressed hereafter.

### *STATEMENT OF THE CASE*

While the Complaint includes Counts based upon the Racketeering Influenced and Corrupt Organizations Act ("RICO"),[4] 18 Pa. C.S.A. §1964(c), and the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001, *et seq*., the Motion for Expedited Collective Action Notification seeks only certification of a conditional class under Section 16(b) of the Fair Labor Standards Act ("FLSA").  29 U.S.C. §216(b).

More particularly, the Motion is based upon only certain of the practices that are alleged in the Complaint to violate the FLSA, which are described by plaintiff as (1) "Meal Break Deduction Policy," (2) "Twenty Minute Break Policy" and (3) "Meal Break Differential Policy." (Plaintiffs' Memorandum of Law In Support of Motion for Expedited Notice to Affected Employees ("Plaintiff's Brief"), at 2; Plaintiffs' Proposed Order)

The Meal Break Deduction Policy is said to based upon the fact that the KRONOS system automatically deducts a half-hour for a meal break from the recorded time of an employee after he has worked five consecutive hours.  Under this "policy," plaintiffs contend, "hourly employees automatically lost one-half hour of pay each work day for a meal period even if they work during that period.  (Plaintiff's Brief at 3-6)

The Twenty Minute Break Policy is actually set forth in the Compensation Manual, and states that "If a non-exempt employee does not receive 20 consecutive minutes of uninterrupted time it will be considered work time and will be paid." (UPMC Compensation Manual, pp. 20-21)[5]  Plaintiffs allege that this policy violates the FLSA.  (Plaintiffs' Brief at 7, 18)

---

[4] Despite the expiration of the ten-day period for filing a RICO Case Statement, as required by Local Rule 7.1.B, plaintiffs have not done so.
[5] These pages from a July 2008 Compensation Manual are attached to the J. Thomas Nelson Affirmation as Exhibit F.  The current Manual pages are not materially different in this regard and are attached as Exhibit A.

Finally, the so-called "Meal Break Differential Policy" is alleged to come into play whenever an employee takes an uninterrupted meal break of more than twenty minutes, but less than one-half hour, such that under the policy, according to plaintiffs' argument, they are deducted thirty minutes for a meal break that might have lasted only 21 to 29 minutes. (Plaintiffs' Brief at 7, 18-19)  None of the Affirmations filed by the named plaintiffs or the other ten opt-in plaintiffs avers that this policy ever applied to her.

While the word "policy" permeates the plaintiffs' complaint and the Affirmations on which they rely to support their request for expedited conditional certification without discovery, the only Policy that has been supplied to the Court is the UPMC Compensation Policy.  The named plaintiffs, the other ten affiants and the several hundred opt-ins have not provided the Court with any policy except the one that Attorney Nelson has filed as an attachment to his Affirmation, which is an excerpt from the UPMC Compensation Policy.  (Nelson Affirmation, Ex. F)  That policy clearly and unequivocally requires that non-exempt employees be paid for all hours worked, including for the full 30-minutes of a meal break if they work over their lunch hour or if their lunches are interrupted by work, regardless of the duration of the interruption. (Nelson Affirmation, Exh. F, pp. 20-21; Donina Declaration Ex. A)

The current UPMC Compensation Policy also provides as follows, as pertaining to this lawsuit:

> Non-exempt employees must be paid for all hours worked.  … Time is considered worked time if the employee performs their regular duties at home, is not substantially relieved of duties during lunch or works before or after their designated schedule. …

> In addition to regularly scheduled work time, common examples of worked time include:

> - Taking authorized training courses from home
> - Working through lunch

- Working before or after a scheduled shift

It is the responsibility of each non-exempt employee to accurately record their time on a daily basis via the manner designated by the department.  This includes … overriding automatic lunch deductions if working through lunch or if interrupted during lunch (see Meal Breaks).  Employees must immediately notify their supervisors if they are unable to properly record their time.

If you believe that your work hours have not been properly recorded, please contact your departmental timekeeper or supervisor.  If after discussions with your departmental timekeeper or supervisor, you do not believe your time has been reported properly, you should contact your business unit's Human Resources department or the UPMC Compliance hotline:  1-877-983-8442 so that an investigation can be initiated.

(UPMC Compensation Policy, pp. 11-12, Donina Declaration Ex. A)

The UPMC Compensation Policy is communicated to hourly employees via the UPMC Infonet, a network available to all UPMC employees.  There is no password required, and UPMC assures that every employee, regardless of the job, has access to a computer in that employee's department.  There are individuals assigned to assist any employee who needs assistance to access the Infonet.  In addition, this aspect of the Compensation Policy is communicated to employees through training sessions, mass emails and articles that have been published in the Company's Newsletters.  (Donina Declaration ¶4)

When an employee's lunch is interrupted or the employee works through lunch, the Policy instructs the employee either to cancel the automatic deduction herself or to have the person who is designated as the timekeeper for the department to do so.  (UPMC Compensation Policy pp. 20-21)  Instructions on how to cancel the automatic deduction are linked to the Compensation Policy.  (Donina Declaration ¶8)

It is evident that at least some of the employees, including three of the four named plaintiffs, are fully aware of and know how to use the procedure for cancelling the automatic deduction for meal breaks.  Erin O'Connell, the only named plaintiff who still works for a

UPMC entity, has cancelled the automatic deduction **91 times**, meaning she was paid for her lunch break, in the last three years.  (Donina Declaration ¶13, Exhibit D)  Camesi and Baker have also cancelled or had cancelled the automatic deduction for meal breaks in the last three years.  (*Id.* ¶14)  One of the nurses who filed an Affirmation with this Court, Lea Ferguson,[6] cancelled or caused the cancellation of the automatic deduction for meal breaks a remarkable 163 times in the year and a half she worked as a Nurse at UPMC Presbyterian Shadyside between August 2006 and March 2008.  This means she was paid for every one of those allegedly "unpaid" meal breaks.  (Donina Declaration ¶ 13, Exhibit "C")

The four named plaintiffs describe themselves in their Affirmations to be Registered Nurses, except for Baker, who is a Licensed Practical Nurse.  (Nelson Affidavit, Exhibits G through J)  Camesi worked at Magee Hospital until July 2008.  (Nelson Affirmation Exh. G ¶2; O'Connell is working in the Corporate Services department. *Id.* Exh. H ¶2; Shaffer worked at Magee and Presbyterian-Shadyside Hospitals (*Id.* Exh. I ¶2); and Baker worked at Montefiore Hospital and Presbyterian-Shadyside Hospital. (Id. Exh. J ¶2)  All of the other ten individuals who filed Affirmations with the Court are Registered Nurses.[7]

Each of the named plaintiffs, as well as the opt-in affiants, make the identical allegations: that they worked during meals or were interrupted during their meals, their supervisors were aware of this, and they were not paid for those meal periods.  Most of the Affirmations state that the affiants, while moving around the hospitals, saw other people working during their lunch breaks.  However, none of the Affirmations disclose that any of the affiants have personal knowledge as to whether the employees they observed were paid.  Nor do any of the

---

[6] Her Affirmation is annexed to Nelson's Affirmation as Exhibit K.

[7] There are actually only 7 individuals who filed Affirmations who would be included in the class that plaintiffs seek to designate.  One of them, Christina Stang, worked at Childrens' Hospital before it was a UPMC entity, and has not worked for UPMC since 2005. (Donina Decl. ¶10).  Two others were exempt employees.  (*Id.* ¶¶ 11-12)

Affirmations disclose how the affiants know that the employee whom they observed working were actually supposed to be on a meal break.  The Affirmations also do not attest that the affiants have any knowledge as to whether the supervisors of the employees they observed working suffered or permitted the work.  None of the Affirmations allege that the affiant or any other employee were a victim of the "Meal Break Differential Policy."

Plaintiffs have named as defendants 23 corporate entities and have identified nearly 1,000 locations at which non-exempt employees are subject to the three policies on which they seek to conditionally certify a class for purposes of giving notice of the suit.  The named plaintiffs and the seven opt-ins who filed Affirmations, and who are worked in non-exempt jobs for UPMC, represent six out of these 1000 locations.  In the complaint, the class that the nurse plaintiffs seek to represent includes hourly workers in the following jobs:  "secretaries, housekeepers, custodians, clerks, porters, nurses aids, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse techs, trainers, transcriptionists, and other health care workers."  Plaintiffs have made no showing that these workers are similarly situated or that expedited notice is appropriate.  Indeed, they have not shown any violation of the FLSA.

## *ARGUMENT*

The FLSA does not mandate notice to potential class members in a collective action. Rather, a district court has the discretion to authorize a plaintiff to send notices to other potential plaintiffs, and should exercise that discretion only in appropriate cases.  *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 170 (1989)(Noting that courts should exercise discretion to authorize

notice to potential class members only "in appropriate cases," where the "judicial system [would] benefit[] by efficient resolution in one proceeding of common issues of law and fact arising from the same alleged . . . activity"); *Parker v. Rowland Express, Inc.,* 492 F. Supp. 2d 1159, 1163 (D. Minn. 2007); (*White v. Osmose, Inc.,* 204 F. Supp. 2d 1309, 1312 (M.D. Ala. 2002); *Camper v. Home Quality Management, Inc.,* 200 F.R.D. 516, 519 (D. Md. 2000)("The relevant inquiry is not whether the Court has discretion to facilitate notice, but whether this is an appropriate case in which to exercise that discretion.")

Before a court may exercise its discretion to conditionally certify an FLSA collective action and authorize the issuance of notice, the plaintiffs must demonstrate that they are "similarly situated" to the putative collective action member whom they seek to notify.  29 U.S.C. §216 (b)("an action may be maintained … by any one or more employees for and on behalf of … other employees similarly situated.")  The Court must determine whether "the plaintiff has demonstrated 'a sufficient factual basis on which a reasonable inference could be made that defendants orchestrated or implemented a single decision, policy, or plan to [violate the FLSA] against their … employees.'" *Mueller v. CBS, Inc.*, 201 F.R.D. 425, 429 (W.D. Pa. 2001) (quoting *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 567 (N.D. Ala. 1995))[8]

The courts have developed a two-step process for implementing notice and determining who is "similarly situated." *Harris v. Healthcare Services Group, Inc.*, 2007 WL 2221411 **2-3 (E.D. Pa., July 31, 2007); *Smith v. Sovereign Bancorp, Inc.,* 2003 WL 22701017 *1-2 (E.D. Pa. Nov. 14, 2003) ("The determination of whether FLSA claimants are 'similarly situated' for the purposes of § 216(b) is a two-step procedure."); *see also* 7B Wright, Miller & Kane, Federal

---

[8] The *Mueller* case, like the *Sperling* case, both involved claims of age discrimination under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.* That Act is enforced, however, under the identical procedures as are applicable to FLSA claims, which are those established in Section 16(b) of the FLSA.

Practice and Procedure § 1807 (3d ed. 2005). The first step is conducted early in the litigation process, when the court has minimal evidence, and consists of a preliminary inquiry into whether the plaintiff's proposed class consists of similarly situated employees. *See Bosley v. Chubb Corp.,* 2005 WL 1334565 *2-3 (E.D. Pa. June 03, 2005).("At this stage, the court grants only conditional certification of the class for the purpose of notice and discovery." *Id.* (citing *Mueller v. CBS, Inc.,* 201 F.R.D. 425, 428 (W.D. Pa.. 2001)). The second step is usually conducted at the close of class-related discovery and consists of a specific factual analysis of each employee's claim to ensure that each proposed plaintiff is an appropriate party. *Bosley,* supra, *4; *see also Moeck v. Gray Supply Corp.,* 2006 WL 42368 *4 (D.N.J. Jan. 5, 2006) ("In the second stage, after the court has more evidence and the case is ready for trial, the court applies a stricter standard."); 7B Wright, Miller & Kane, Federal Practice and Procedure § 1807 (explaining that at the second stage, "the court will again make its certification decision based on the 'similarly situated' standard," but "require[s] a higher level of proof than for initial conditional certification"). If the final class is not certified, the class is decertified, the opt-in plaintiffs are dismissed without prejudice and any remaining plaintiffs are permitted to proceed to trial. *Chabrier v. Wilmington Fin., Inc.,* 2006 WL 3742774 *2 (E.D. Pa. Dec. 13, 2006).

Conditional certification at this juncture, therefore, requires at least a conditional showing that there exists a common policy affecting putative class members alike that violates the FLSA. *See Wright & Miller, supra,* § 1807, at 489-90 (3d. ed. 2005). While the burden at the first stage is not great, the plaintiffs cannot rely on "unsupported assertions of widespread violations." *Edwards v. City of Long Beach*, 467 F. Supp. 2d 986, 990 (C.D. Cal. 2006). Rather, "before subjecting an employer to the burdens of a collective action, the plaintiffs must establish a colorable basis for their claim that a …class of 'similarly situated' plaintiffs exists." *West v.*

*Border Foods, Inc.*, 2006 WL 1892527 *9 (D. Minn. June 12, 2006).  The Court must be

satisfied "that there is a basis to conclude that questions common to a potential group of

plaintiffs would predominate in a determination of the merits."  *Mike v. Safeco Ins. Co. of Am.*,

274 F. Supp. 2d 216, 220 (D. Conn. 2003).

## A.    Plaintiffs Have Not Shown That Any Employee Has Been Subjected to an Unlawful Compensation Practice

In their Brief, the plaintiffs often stress that the Courts do not concern themselves with

the merits of a claim when considering whether to conditionally certify a collective action.  (E.g.,

Plaintiffs' Brief at 14, 23-30)  It is unsurprising that they should work so hard to turn the Court's

head away from the merits, since, as shown below, none of the plaintiffs has shown that she was

the victim of *any* violation of the FLSA.  In focusing on what is *not* required at the notice stage,

however, plaintiffs ignore what *is* required—"a modest factual showing sufficient to demonstrate

that [she] and potential plaintiffs together were victims of a common policy or plan *that violated

the law*."  *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 238 (N.D.N.Y.

2002)[emphasis added].  The plaintiffs must demonstrate that the putative collective action

members were together the victims of an *unlawful s*ingle decision, policy or plan.  *Mueller v.

CBS, Inc., supra*, at 429; *Colozzi v. St. Joseph's Hospital Health Center*, 595 F. Supp. 2d 200,

206 (N.D.N.Y. 2009)("[P]laintiffs bear the burden of demonstrating that they are similarly

situated to the remainder of the proposed class, requiring at a minimum that they make a 'modest

factual showing' that they and the putative class members were 'victims of a common policy or

plan *that violated the law*.'")[emphasis added]; *Ruggles v. Wellpoint, Inc.,* 591 F. Supp. 2d 150,

158-59 (N.D.N.Y. 2008)(same); *Mike v. Safeco Ins. Co., supra*, at 220 (same).

There are three practices of UPMC that plaintiffs allege provide the "common policy or

plan that violated the law."  Plaintiffs have not, however, made an evidentiary showing that any

of the three practices violate the FLSA.  In other words, none of the Affirmations filed with the

Court with Mr. Nelson's Affirmation discloses a violation of the FLSA with respect to a named

plaintiff or even one of the opt-in plaintiffs, let alone a violation which is common to a purported

class of hourly employees.

*1.      The Meal Break Deduction Policy*

A practice of automatically deducting one-half hour for a meal break is not a violation of

the FLSA or any other law.  *Colozzi v. St. Joseph's Hospital Health Center*, 595 F. Supp. 2d 200,

206 (N.D.N.Y. 2009); *Ledbetter v. Pruitt Corp.*, 2007 WL 496451 * 4 (M.D. Ga. Feb. 12,

2007)(denying conditional certification based upon automatic deduction for meal periods);

*Enright v. CGH Medical Center*, 1999 WL 24683 *6 (N.D. Ill. Jan. 12, 1999); U.S. Wage &

Hour Division, Department of Labor Fact Sheet No. 53, *The Health Care Industry and Hours

Worked* (2008)(attached to Nelson Affirmation as Exhibit E).

A simple showing that the plaintiffs and 30,000 other employees are subject to this

practice does not, therefore, permit conditional certification of a class, since there is no common

policy or plan that violated the law.

The Affirmations filed by the four plaintiffs and the opt ins do not disclose a violation of

the FLSA in connection with the handling of the plaintiffs' own compensation, let alone a

violation of the FLSA involving a broad class of other nurses or hourly employees.

The only allegation made in the Affirmations filed in this Court respecting the practice of

automatically deducting the meal break is that it has resulted in the affiants not being paid for

their missed meal breaks.  It is not, however, a violation of the FLSA for an employer not to pay

an employee for time worked, unless that would result in the employee receiving less than the

minimum wage for the week, or unless the employee had worked more than 40 hours in the

workweek in which the meal break was not taken, such that the employee would be owed overtime for the missed meal. *Badgett v. Rent-Way, Inc*., 350 F. Supp. 2d 642, 658 (W.D. Pa. 2004)(McGlaughlin, J); *Masterson v. Federal Express Corp.,* 2008 WL 5189342  *3 (M.D. Pa. 2008); Wage & Hour Div. Field Ops. Handbook §30b02-03 (6/30/2000).[9]

None of the Affirmations allege that any employees have been paid less than the minimum wage as a result of "The Meal Break Deduction Policy."  Nor do any of the Affirmations suggest that any employee was deprived of overtime wages because her missed meal was not counted as hours worked in a particular work week.  Indeed, in the approximately 100 pages of Affirmations that are annexed to Mr. Nelson's own Affirmation, the words "minimum wage" and "overtime" do not appear to have been mentioned at all.

The sole claim that surfaces from a review of the Affirmations filed in support of plaintiffs pending Motion, insofar as it concerns "The Meal Break Deduction Policy" is that the affiants worked time for which they were not paid.  Since this alleged non-payment is not a violation of the FLSA, it cannot serve as the basis for a conditional certification.  Discovery might disclose that some of the named plaintiffs or opt-ins indeed have claims for overtime payments on the grounds that they worked through meals, were observed by their supervisors, who knew that they were not going to be paid, and worked at least 40 hours in that particular week, and were not paid overtime for the meal break.  At this juncture of the case, however, none has made that kind of a showing so there is no occasion to consider whether a conditional class should be certified.

---

[9] Plaintiffs would, of course, have a remedy under the Pennsylvania Wage Payment and Collection Law for any time they worked and were not paid, to the extent that the work was authorized.

2.        *The Twenty Minute Break Policy*

The second violation that plaintiffs' allege is common to a class of employees stems from the provision in the UPMC Compensation Policy that states that "If a non-exempt employee does not receive 20 consecutive minutes of uninterrupted time it will be considered work time and will be paid."  (UPMC Compensation Policy, Nelson Affirmation, Exhibit E, p. 20).  Plaintiffs contend that the FLSA provides that for a meal period to be bona fide the employee must be "completely relieved from duty for at least 30 minutes."  For this contention, they cite a Wage & Hour Division Interpretive Bulletin, 29 C.F.R. §785.19.  (Plaintiffs' Brief at 8)[10]

Plaintiffs are mistaken in two respects.  First, virtually every court to address the issue of meal breaks as "hours worked" under the FLSA has held that an employee need not be "completely relieved from duty" in order for a break to be treated as a *bona fide* meal break, such that the time is not part of the "hours worked" for the week.  Instead, the courts have applied the standard that a meal break will constitute hours worked only if the time spent by the employee is "predominantly for the benefit of the employer."  *Oakes v. Commonwealth of Pennsylvania,* 871 F. Supp. 797, 799 (M.D. Pa. 1995); *Roy v. County of Lexington, South Carolina,* 141 F.3d 533, 545 n. 5 (4th Cir.1998); *Reich v. Southern New England Telecommunications Corp.,* 121 F.3d 58, 64-65 (2d Cir. 1997); *Leahy v. City of Chicago, Ill.,* 96 F. 3d 228, 230 n. 2 (7th Cir. 1996); *Armitage v. City of Emporia, Kan.,* 982 F. 2d 430, 431 (10th Cir. 1992); *Chao v. Tyson Foods, Inc.,* 568 F.Supp.2d 1300, 1319 (N.D. Ala. 2008).  See *Armour & Co. v. Wantock,* 323 U.S. 126, 133 (1944) ("Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case.")

---

[10] Part 785 of the regulations of the Department of Labor, Wage & Hour Division, which discuss "Hours Worked," are not binding Regulations.  They are interpretive bulletins, whose weight depends upon their persuasive value.  29 C.F.R. § 785.2; *Reich v. Southern New England Telecommunications Corp.,* 121 F. 3d 58, 64-65 (2d Cir. 1997).

Thus, under the prevailing interpretation of the FLSA, occasional telephone calls, pages or other minor interruptions do not convert a meal period into "hours worked" unless the interruptions are sufficient to render the time spent "predominantly for the benefit of the employer."  In this regard, the UPMC Policy not only does not violate the FLSA, but it exceeds its requirements by providing that unless an employee has at least 20 consecutive minutes of "uninterrupted" time, she will be paid for the full meal break.

Plaintiffs are also mistaken in their contention that a meal period must be at least 30 minutes long to be excluded from an employee's hours worked.  In making this argument, plaintiffs do not mention the companion Interpretive Bulletin, at 29 C.F.R. § 785.8, which states that "Rest periods of short duration, running from 5 minutes to about 20 minutes, are common in industry.…They must be counted as hours worked."  This provision implies that rest periods of 20 minutes or more need not be counted as hours worked, which is consistent with the UPMC policy.  Moreover, the courts have held that breaks of less than 30 minutes can be bona fide meal breaks which do not need to be counted as hours worked.  *Myracle v. General Elec. Co.,* **1**992 WL 699863 (W.D. Tenn. December 1, 1992), *aff'd* 1994 WL 456769 (6th Cir. August 23, 1994)(holding that a 20-minute meal period was *bona fide*); *Berger v. Cleveland Clinic Foundation*, 2007 WL 2902907 *6 (N.D. Ohio 2007)("In *Myracle,* the Sixth Circuit rejected the plaintiffs' assertion that their twenty-minute lunch breaks were presumptively compensable because they were shorter than the break described in Section 785.19(a)."); *Blain v. General Elec. Co.,* 371 F. Supp. 857, 861-62 (D.C. Ky. 1971)(holding that 20 minute meal breaks do not constitute "hours worked" because they are less than 30 minutes).  *See Mitchell v. Greinetz*, 235 F. 2d 621, 623-24 (10th Cir. 1956)(holding that a 15 minute break was not long enough in the circumstances to avoid being treated as hours worked).

It is clear, therefore, that plaintiffs' allegation that the UPMC Compensation Manual on its face violates the FLSA is incorrect.  On the contrary, the provision on which plaintiffs' contention is based actually goes beyond what the law requires in favor of its hourly employees.[11]

A conditional certification cannot be predicated on "subclass 2," because there is no common violation of the law, there being no violation of the law shown at all.

### 3.      The Meal Break Differential Policy

The third, and final, allegedly illegal practice of UPMC on which plaintiffs seek to base their request that the Court authorize notification to a conditionally certified class is what they call "The Meal Break Differential Policy."  This practice is described in plaintiffs' Brief as involving the deduction of a 30-minute break on occasions when an employee has been able to enjoy only between 21 and 29 minutes of uninterrupted rest.  (Plaintiffs' Brief at 7, 18-19)

This "policy" cannot provide a basis to conditionally certify a class for two reasons.

First, plaintiffs have offered no evidence that any of them have been the victim of the "Meal Break Differential Policy."  Their Affirmations say nothing about any of them having taken, for example, a 25-minute uninterrupted meal break and been docked one-half hour.  Nor do any of the opt-in Affirmations disclose that there is an actual victim of this practice in existence.  Consequently, even assuming arguendo that there were out there a class of employees who have taken breaks of between 21 and 29 minutes, and who have been docked one-half hour, and where that either brought them below the minimum wage or resulted in their working uncompensated overtime for that week, whose supervisors were aware that this had occurred and that they had not been paid—were there such a class in existence—plaintiffs have not shown that

---

[11] In addition to providing compensation if the break is interrupted, even if the time period is not spent "predominately for UPMC's benefit," UPMC's policy credits an employee with the full 30 minutes time even if the employee enjoyed a significant of her meal break uninterrupted.

they are "similarly situated" to that class.  For this reason, a class of employees cannot be conditionally certified based upon the alleged "Meal Break Differential Policy."

The second reason why the "Meal Break Differential Policy" would not provide a basis for the plaintiffs to give notice to a putative class of victims is that this policy falls plainly within the type of practices that the Courts have found to be "*de minimis*."  That is, too trivial a violation to warrant asking the Court for a remedy.

It surely is possible that there are employees who have taken, for example, a 25-minute meal break on some days, and have had their hours worked reduced by 30 minutes such that there was 5 minutes allegedly unpaid.  By the same token, it is surely as possible that employees have taken a 19-minute lunch, and been paid for working 30-minutes, instead of 11.  Since employees do not clock in and out for lunch, it would not be a stretch to suppose that there are employees who take 35 minute lunches, but are docked only 30 minutes.  The law does not concern itself, nor should this court, with such *de minimis* impacts on employee compensation.

The standard for determining whether time worked is *de minimis* under the FLSA involves a consideration of three factors: "(1) the practical administrative difficulty of recording the additional time; (2) the aggregate amount of compensable time; and (3) the regularity of the additional work."  *De Asencio v. Tyson Foods, Inc*., 500 F. 3d 361, 374 (3d Cir. 2007); *Lindow v. United States,* 738 F. 2d 1057, 1062 (9th Cir. 1984); *Barvinchak v. Indiana Regional Medical Center*, 2007 WL 2903911 *16 (W.D. Pa. September 28, 2007).  The critical issue is whether the time is regularly spent or irregular and sporadic.  See 29 C.F.R. §785.47 ("An employer may not arbitrarily fail to count as hours worked any part, however small, of the employee's *fixed or regular* working time or practically ascertainable period of time he is *regularly required* to spend

on duties assigned to him.")[emphasis added].  In *Lindow v. United States, supra*, the Court of

Appeals stated that:

> [a]n important factor in determining whether a claim is *de minimis* is the amount
> of *daily time* spent on the additional work. There is no precise amount of time that
> may be denied compensation as *de minimis.* No rigid rule can be applied with
> mathematical certainty. [citations omitted] Rather, common sense must be applied
> to the facts of each case. Most courts have found *daily periods* of approximately
> 10 minutes *de minimis* even though otherwise compensable.

*Lindow,* 738 F. 2d at 1062 (emphasis added)

The "Meal Break Differential" of which plaintiffs complain in this case involves periods

of time that are necessarily less than nine minutes duration, and which occur, if at all, at irregular

intervals.  It would be administratively unreasonable for UPMC to attempt to take these into

consideration in its compensation practice.  These sporadic and small time periods are classic

examples under the case law of *de minimis* infractions.

For this additional reason, the "Meal Break Differential Policy" will not support a

conditional determination that there is a common issue involving an illegal policy that warrants

notification to a class of hourly employees.

In summary, plaintiffs have offered three UPMC practices as representing common

policies that violate the law and justify conditional certification of a class of employees for

purposes of giving notification of this lawsuit.  Plaintiffs have not, however, offered any

evidence that any of them, or any of the several hundred opt ins, have even been the victim of an

illegal policy, let alone one that has a similar affect on thousands of others.

**B.     Even if Plaintiffs Had Provided Evidence That They Have Been Underpaid In
Violation of the FLSA, Their Allegations Are Not Well-Suited for Collective Treatment**

Plaintiffs' Brief suggest that conditional certification of some form of a collective action

is a *fait accompli* in FLSA cases,  It is important to point out that each of these cases cited by

plaintiffs have been decided on the evidence unique to that particular case and the showings of

commonality that have been made on the record of that case, none of which are present here.

While the evidentiary standard for conditional certification is lenient, it is not automatic.  The

allegations being made in this case do not on their face appear particularly suitable for collective

treatment, and it would be imprudent to hastily authorize thousands of notices only to learn later

that there is no manageable common issue that binds the group and makes a collective action

efficient.  As noted by the district court in *Freeman v. Wal-Mart Stores, Inc.,* 256 F. Supp. 2d

941, 945 (W.D. Ark. 2003), "it would be a waste of the Court's and the litigants' time and

resources to notify a large and diverse class only to later determine that the matter should not

proceed as a collective action because the class members are not similarly situated."  In a similar

vein, in *Colozzi v. St. Josephs Hospital*, 595 F. Supp. 2d 200,207 (N.D.N.Y. 2009) the court

remarked:

> Although the standard which governs plaintiff's application is lax, and their
> burden modest, a court must nonetheless take a measured approach when
> addressing a request for collective action certification, mindful of the potential
> burden associated with defending against an FLSA claim involving a broadly
> defined collective group of plaintiffs."

Despite their repetition of the word "policy" in their Complaint, Affirmations and Brief,

there is only one "policy" that has been filed with the Court, the UPMC Compensation Policy,

and that policy is in every respect in full compliance with the FLSA.  The plaintiffs do not

identify a common unlawful practice that affects in a similar way a substantial group of diverse

employees throughout UPMC.  Instead, the plaintiffs claim that they sometimes work "off the

clock," and are not credited with hours worked for that work.  For one plaintiff to prove a

violation of the FLSA because of her working during or through her meal break, she must prove

- that her meal break was spent "predominately for the benefit of" the hospital;
- that the automatic deduction was not cancelled;

- that when she worked during the break her supervisor was aware of it (*i.e.,* either observed her or she reported it)[12];
- that her supervisor also had reason to know that she did not cancel or cause to be cancelled the automatic deduction;
- and that as a result of that deduction, the plaintiff did not make the minimum wage for the week or that the plaintiff would have worked at least 40 hours in that week and was not paid overtime due to the deduction.

Because of the highly individualized fact-intensive nature of an off-the-clock claim, many courts have shown a judicious reluctance to certify a collective class, especially where there has been no discovery and plaintiffs have filed only conclusory and unsupported statements to support their allegations of widespread common violations.[13]  *E.g., Castle v. Wells Fargo Financial, Inc*., 2008 WL 495705 (N.D. Cal. 2008)("Plaintiffs have not identified a common policy or practice on a nationwide or statewide basis, and indeed the official written policy at Wells Fargo is to pay overtime to non-exempt employees. Instead, plaintiffs allege that they have been denied overtime pay for "off the clock" hours worked under a variety of different circumstances.");  *Ledbetter v. Pruitt Corp*., 2007 WL 496451 * 4 (M.D. Ga. Feb. 12, 2007)(denying conditional certification based upon automatic deduction for meal periods); *West v. Border Foods, Inc***.,** 2006 WL 1892527 (D. Minn. July 10, 2006); ("Under similar circumstances, Courts from other jurisdictions have determined that where an "off-the-clock" claim requires significant individual considerations, it may be inappropriate for conditional certification."); *Diaz v. Electronics Boutique of America,* 2005 WL 2654270 at *5 (W.D.N.Y. October 17, 2005).(plaintiff's "allegations-viz., that he worked 'off-the-clock' without compensation and that his timesheets

---

[12] To establish that the employer suffered or permitted her to work, an employee must show that "the employer knows or has reason to believe that [the employee]is continuing to work."  *Kosakow v. New Rochelle Radiology Assoc., P.C.,* 274 F. 3d 706, 708 (2d Cir. 2001); 29 C.F.R. §785.11.

[13] The Court should note that a number of the cases that plaintiffs cite for the proposition that courts "routinely" allow class notification in meal break deduction cases, have done so *after discovery* or have allowed the notice only on a limited basis.  E.g., *Berger v. Cleveland Clinic Foundation*, 2007 WL 2902907 (N.D. Ohio 2007) (After discovery and only a single location involved); *Jones-Turner v. Yellow Enteprise Sys., LLC*, 2007 W.L. 3145980 (W.D. Ky Oct. 25, 2007)(after discovery and only one location involved); *Crawford v. Lexington-Fayette Urban County Gov't,* 2008 W.L. 2885230 (E.D. Ky. July 22, 2008)(after discovery/one facility involved)

were altered to delete overtime hours worked-are too individualized to warrant collective action treatment."); *Dudley v. Texas Waste Systems, Inc*., 2005 WL 1140605 (W.D. Tex. May 16, 2005)(Refusing to certify an automatic deduction conditional meal break collective action); *Hinojos v. Home Depot, Inc.,* e WL 3712944 (D. Nev. Dec. 1, 2006)(dnying certification of off-the-clock claims because it was "clear that resolution of plaintiffs' claims depends on the specific employment conditions in each store and department … and would likely require testimony from individual supervisors and other employees about the circumstances allegedly giving rise to the claimed violations."); *Lawrence v. City of Philadelphia,* 2004 WL 945139 at *2 (E.D. Pa. April 29, 2004)("off-the-clock" claim did not involve regularly scheduled hours that were worked by all members of the class, because "[t]he circumstances of those individual claims potentially vary too widely to conclude that * * * the Plaintiffs are similarly situated."); *England v. New Century Financial Corp.,* 370 F. Supp. 2d 504, 509 (M.D. La. 2005)("off-the-clock" claim involved a multitude of different managers at different locations, and where liability at one store location would not necessarily require a finding of liability at another location); *Basco v. Wal-Mart Stores, Inc,* 2004 WL 1497709 at *5 (E.D. La. July 2, 2004)(An off the clock claim--"To create a collective action class, including the cost associated with that when a Court is convinced that there is insufficient support for the same prior to certification would be an exercise in futility and wasted resources for all parties involved."); *Sheffield v. Orius Corp*., 211 F.R.D. 411, 417 (D. Or. 2002)(denying certification because "plaintiffs are employed by numerous defendants …they hold a variety of job classifications, and did not work at the same job site.")

    Plaintiffs appear to concede that they must establish a sufficient "factual nexus" between themselves and the putative members of the collective action, but they have utterly failed to do so.  They have submitted nothing more that vague and conclusory affirmations from a dozen

employees, all patient care nurses, at five or six of the nearly 1,000 UPMC facilities to which

they want to send notifications.  It would require a blind leap of faith for this Court to conclude

that, because these several nurses worked through some meal breaks without compensation, in

direct violation of UPMC's explicit and widely disseminated policies, that, therefore, thousand

of other employees at hundreds of other facilities must have done the same thing.[14]  While

plaintiffs have filed Affirmations in which the affiants state that they have, on their walks

through different areas of a hospital, observed people working during a meal break, they do not

explain how they would know that the employees they see are actually on a meal break, and

more importantly, they do not explain how they would know what the payroll records of those

employees would reflect.

　　　This Court should not authorize a collective action of any scope because the plaintiffs

have not established the existence of  a common policy or plan that violated the law, but instead

have alleged a highly fact-specific and individualized claim for overtime pay.

### C.　　If This Court Certifies a Conditional Class, It Should Be Limited to Nurses Having Patient Care Responsibilities At the Same Facilities As the Plaintiffs

　　　Although, for reasons discussed above, there is no legal justification for granting the

plaintiffs' expedited Motion on the basis of the record before the Court, if such approval is given

at all, it should be limited to employees who perform similar jobs as the plaintiffs and who work

at the same locations.

　　　Plaintiffs are nurses, all of whom allegedly have hands-on responsibility for patient care

at a handful of hospitals in Pittsburgh.  The uniqueness and urgency of their duties is emphasized

repeatedly as being the reason for their missing meals and having their meal breaks interrupted.

---

[14] It is worth repeating at this point that three of the four plaintiffs in fact were paid for some meal periods.   Indeed, O'Connell was paid for 91 meal breaks in the last three years, and another affiant for 163 of them.  It is not, therefore, the case that all meals go unpaid, even for this unrepresentative handful of current and former nurses.

Employees in jobs such as secretary, custodian, phone operator, receptionist would have nothing in common with these nurses. Nor would any hourly employees who were not patient-care givers in hospitals. Also, plaintiffs have stressed the fact that their particular facilities have undergone reductions in force over the last few years, and that those facilities are short-handed, which is why they often miss meal breaks. These allegations are unique to the facilities at which the plaintiffs work. They say nothing about circumstances at the other 900-plus facilities whose employees plaintiffs seek to invite to their lawsuit.

Courts that have granted conditional certification of a collective action in similar cases have tended to limit the notice to non-exempt employees in the same jobs and who work in the same facilities as the named plaintiffs. *See, e.g., Colozzi v. St. Josephs Hospital*, 595 F. Supp. 2d 200, 208-09 (N.D.N.Y. 2009)(limiting notice to employees having responsibility for patient-care and treatment working at the same facility as the named plaintiffs)[15]; *Sherrill v. Sutherland Global Services,* 487 F. Supp. 2d 1231, 1235 (W.D.N.Y. 2007)(Notice limited to employees in the same job as named plaintiff*); Ruggles v. Wellpoint, Inc.*, 2008 WL 4866053 (N.D.N.Y. 2008)(Notice limited to the same jobs as the named plaintiffs); *Horne v. United Services Auto Ass'n,* 279 F. Supp. 2d 1231, 1235 (M.D. Ala. 2003 (limiting notice to the plaintiff's work location).

In *Mares v. Caesars Entertainment, Inc.,* 2007 WL 118877 (S.D. Ind. Jan. 10, 2007), an "off-the-clock" case where the court did grant conditional certification of a collective action, the court nevertheless refused to allow notice to employees at facilities other than those at which the named plaintiffs worked. The court reasoned as follows:

---

[15] The *Colozzi* court rejected out of hand a request to authorize notice to all hourly employees who were subject to an automatic meal time deduction. *Id.* at 207 ("I reject the existence of the break deduction policy practriced through Kronos, standing alone, as being sufficient as a common denominator to permit a collective action on behalf of all of defendants' hourly employees subject to that practice."

> Courts have required plaintiffs to offer admissible evidence to support their claims that those they wish to represent are similarly situated. [citations omitted][16] Unsupported allegations are insufficient to establish that the putative plaintiffs are similarly situated. [citations omitted] *Mr. Mares's understanding based on alleged conversations with unidentified persons is insufficient to establish personal knowledge as to the policies and practices in effect at facilities other than the one at which he has worked*."

*Id.* *3 [emphasis added].

The Court's reasoning in *Mares* fits the present case hand-in-glove.  The plaintiffs have

offered only their hearsay statements that do not show personal knowledge as the sole support of

their request to give notice to employees in other types of jobs and at other locations.  This

hearsay is not a sufficient foundation to support the conditional certification of a class.  For

example, speaking of other employees at Magee Hospital, Camesi says "My impression is that

almost all hospital employees have their meal breaks interrupted." (Nelson Aff. Exh. G ¶11)  She

avers that "I have had unit secretaries complain to me that they do not get paid when they work

through their meal break." (*Id.* ¶13)  She states that "I and other hourly employees have had

conversations with our managers in which we discussed how we were working through these

meal periods and were not getting paid."  (*Id.* ¶24).

If there are widespread violations of the FLSA even at one hospital, let alone at a

thousand facilities, or involving "almost all hourly hospital employees," as alleged by Camesi,

then the Court ought to require that actual evidence of these violations be presented.  If plaintiffs

lack that, then they can conduct discovery to establish an evidentiary basis for giving of a

---

[16] *Citing, Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 866-67 (S.D. Ohio 2005)(striking inadmissible hearsay from affidavits supporting motion for collective action); *McElmurry v. U.S. Bank Nat'l Ass'n*, 2005 WL 2078302 *11 (D. Or. July 29, 2005)(plaintiffs must support their claims that others are similarly situated with admissible evidence); *Richards v. Computer Sciences Corp.*, 2004 WL 2211691 *1-2 (D. Conn. Sept. 28, 2004)(striking hearsay portions of affidavits submitted in support of motion to proceed as a collective action and those that were not supported by personal knowledge)

conditional notice, including submitting themselves to examination so that defendants can

determine whether they have themselves ever actually been the victim of an FLSA violation.

If the Court, contrary to the arguments set forth earlier in this Brief, decides that some

conditional class of employees should be given notice of this lawsuit, then the Court should limit

the class to registered and licensed practical nurses having direct patient care responsibilities at

one of the hospitals for which the named plaintiffs work or worked.

### D.      If Plaintiffs Are Authorized to Give A Notice, It Should be Limited to U.S. Mail Notice and Plaintiffs Should Not Be Given Detailed Personal Information About Defendants' Employees

Plaintiffs' proposed Order calls for communication of the Notices, in addition to mail, by

having defendants post opt-in forms in conspicuous places at all of their clinics, hospitals and

other locations, by having the defendants email notices and opt-in forms to employees; and by

having the defendants publicize the notice five times in an employee newsletter or similar

communication.  Plaintiffs also request that the defendants be ordered to provide counsel for

plaintiffs with a list in an Excel spreadsheet with the names, current or last known addresses,

telephone numbers, social security numbers, locations of employment, dates of employment,

dates of birth and email addresses of all current and former employees who were subject to the

automatic deduction policy. Defendants object to these requests.

### 1.      First Class Mail is the Best Means to Assure Accurate and Timely Notice

As to communication of the notice, it is well-established that first-class mail is an

adequate means, and indeed the preferred method, of providing potential class members with

"accurate and timely notice of the pendency of a collective action."  *Hoffmann-La Roche, Inc. v.*

*Sperling*, 493 U.S. 165, 170 (1989)  In *Reab v. Electronic Arts, Inc.*, 214 F.R.D. 623 (D. Colo.

2002), the district court rejected the plaintiffs request to notify potential class members by electronic mail and by a posting on a website.  The court stated:

> In contrast [to first class mail], electronic communication inherently has the potential to be copied and forwarded to other people via the internet with commentary that could distort the notice approved by the Court.  Electronic mail heightens the risk that the communication will be reproduced to large numbers of people who could compromise the integrity of the notice process.  In addition, email messages could be forwarded to nonclass members and posted to internet sites with great ease.  First class mail ensures, at the outset, that the appropriately targeted audience receives the intended notification and maximizes the integrity of the notice process.

214 F.R.D. at 630-31.  *See also Rubery v. Buth-na-Bodhaige, Inc.,* 569 F. Supp. 2d 334, 338 (W.D.N.Y. 2008)(rejecting newsletter and email publication); *Sherrill v. Sutherland Global Serv., Inc.,* 487 F. Supp. 2d 344, 350-51 (W.D.N.Y. 2007) (denying plaintiffs' request to email notice and publicize notice three times in the employee newsletter); Similarly, in *Karvaly v. eBay, Inc.,* 245 F.R.D. 71, 91 (E.D.N.Y. 2007), the district court rejected email in favor of first-class mail because email "creates risks of distortion or misleading notification that are substantially reduced when first-class mail is used."

Posting a notice in conspicuous locations at all of the defendants' locations and publishing the notice in a newsletter would not limit the communication to the employees entitled to notice, would create significant confusion and unrest as to who is included in the class, and would be a source of great disruption and distraction in the hospitals and clinics. *See Mowdy v. Beneto Bulk Transport*, 2008 WL 901546 (N.D. Cal. Mar. 31, 2008)(posting of notices not necessary to effect "best notice practicable")

Defendants request, therefore, that if a notice is authorized, it be sent only to the members of the conditional collective action and only by United States mail.

   2.      *Plaintiffs' Attorneys Are Not Entitled To Personal Information About Employees*

The court have routinely denied requests by class counsel for personal information about employees whom they do not represent, citing privacy concerns of the employees.  *E.g. Colozzi v. St. Joseph's Hospital Health Center,* 595 F. Supp. 2d 200, 210 (N.D. New York  2009) (rejecting request for social security numbers, phone numbers, location of employment, dates of birth and e-mail addresses for potential opt-in plaintiffs*); Francis v. A&E Stores, Inc.*, 2008 WL 2588851 *3 (S.D.N.Y. Jun. 26, 2008)(rejecting request for social security numbers, telephone numbers, dates and locations of employment – names and addresses were sufficient); *Campbell v. Price Waterhouse Coopers, LLP,* 2008 WL 2345035 (E.D. Cal. Jun. 5, 2008)(denying disclosure of telephone numbers based on privacy rights of current and former employees).

Plaintiffs counsel does not need any information save the members' names, job titles and addresses.  This request should be rejected.

### E.    Plaintiffs' Form of Notice Is Objectionable

Plaintiffs have filed a proposed form of Notice.  (Nelson Aff. Exhibit A)  Defendants have a significant number of objections to this Notice, which is misleading and self-serving.  For example, the Notice is not limited to the claims for which plaintiffs have asked the court to certify a collective action—employees who were not paid overtime or the minimum wage because of a practice of automatically deducting one-half hour for meal breaks after five hours worked.  Instead, the notice simply says that the plaintiffs claim that "UPMC failed to pay overtime to its hourly employees."  This type of broadly worded notice would result in all hourly employees thinking that the plaintiffs are talking about them.  The Notice states that a collective action has been certified on behalf of "employees affected by UPMC's policy," without defining the practice which limits the class.  These are two of many other objectionable points in the proposed notice.

The proposed form of Notice invites the employees to visit the plaintiffs' law firm's web site, which is a champertous conglomeration of self-praise and misinformation.[17]  It is the Court, not counsel, who has the responsibility to control the information which is given to potential opt-ins.  *Bouder v. Prudential Financial, Inc.*, 2007 WL 3396303 (D.N.J. Nov. 8, 2007)("Plaintiff's counsel's proposed letter usurps this Court's power and statutory duty to oversee the FLSA-mandated process for court-facilitated notice to potential collective action members, including the fair content of such notice.")  The Court should, instead of approving a notice that directs employees to this Web Site, issue an Order requiring that it be modified during the pendency of this lawsuit,  prohibiting any reference on the Web Site to this action.  *See Maddox v. Knowledge Learning Corp.*, 499 F. Supp. 2d 1338 (N.D. Ga. 2007)(ordering a website that was posted prior to conditional certification modified when it contained unbalanced, misleading and inaccurate information); *Jones v. Casey's General Stores*, 517 F. Supp. 2d 1080, 1089 (S.D. Iowa 2007)(same).  In any case, the court should not approve a notice that essentially directs employees to get their information about the case from the plaintiffs' attorneys.

It would be premature to spend further time on the issue of the Notice, since it is unclear that any Notice will be approved and, if so, to what group of employees or former employees. Defendants request, therefore, that if the Court approves giving of notice at all, that the parties be given the opportunity to develop a mutually acceptable letter, and failing that, that the Court hear both parties on the issue of notice at that time.

---

[17] For example, there are links that take browsers to articles proclaiming $39 million awarded in a case and other high verdict numbers.  The Website also mentions the lawsuits against UPMC and Mercy Hospitals.  The Supreme Court has recognized that although "[c]lass actions serve an important function in our system of civil justice," they also presnet "opportunities for abuse."  The potential abuses noted by the Court inclued "'heightened susceptibilities of nonparty class members to solicitation amounting to barratry."  *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 99-101 (1981)

*CONCLUSION*

For the reasons reviewed in detail above, defendants request that the Court decline

plaintiffs' Motion for Expedited Collective Action Notification.

Respectfully submitted,


            s/John J. Myers
John J. Myers
Pa. I.D. No. 23596
Eckert Seamans Cherin & Mellott, LLC
44th Floor, 600 Grant Street
Pittsburgh, PA 15219
412-566-5900