IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| KAREN CAMESI, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 09-85J |
| ) | |
| v. ) | Magistrate Judge Bissoon |
| ) | |
| UNIVERSITY OF PITTSBURGH ) | |
| MEDICAL CENTER, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## ORDER

Defendants' Motion for Sanctions (Doc. 286), based on Plaintiffs' counsel's unauthorized communications with putative collective action members, will be denied, consistent with the instructions below.

Defendants have come to learn, and Plaintiffs admit, that Plaintiffs' counsel mailed copies of a letter, dated September 1, 2009, to an untold number of putative collective action members in this case. *See generally* Pls.' Opp'n Br. (Doc. 294) at 3 (citation to record evidence omitted). This issue does not reach the Court in a vacuum, as it previously was addressed in a substantially similar FLSA action, Taylor v. Pittsburgh Mercy Health System, Inc., Civil Action No. 09-377 (W.D. Pa.) (Bissoon, M.J., presiding). In Taylor, the defendants requested a blanket protective order requiring the plaintiffs to refrain from utilizing the employee information produced by the defendants for any purpose other than issuing Court-approved notice. *See* Doc. 90 in 09-377 at 2 (citation omitted).

In response, the same lawyers representing Plaintiffs here indicated that their "decision to undertake additional mailings [wa]s a fluid process in reaction to the events following issuance

of the [C]ourt-approved notice." *See id.* at 3 (citation omitted). Counsel's non-exhaustive list of potential transmissions included: "[mailers r]eminding employees of the opt-in deadline"; "[sending] information about the case consistent with the Court-approved notice"; and "[c]onfirming that putative plaintiffs have received the Court notice." *See id.* at 3 (citation omitted).

Although the Court in Taylor agreed with Plaintiffs' counsel that the defendants had failed to meet their heavy burdens regarding the entry of a blanket protective order, it found the plaintiffs' stated desire to have unfettered written communications, post-notice and without the benefit of judicial supervision, inappropriate:

> [In light of] the relatively considerable latitude afforded to [the p]laintiffs, . . . the Court . . . [finds] it appropriate for their counsel to identify any contemplated additional mailings before they are sent. . . [T]he undersigned generally agrees [with those decisions holding] that the court-controlled mechanism should trump . . . attorney driven modes of communication after conditional certification [is granted]. . . . Given the uncertainties that lie ahead, Plaintiffs' counsel understandably will not voluntarily cede the possibility of additional mailings given their duty to zealously represent the legal interests of the putative collective action. Nevertheless, the undersigned remains convinced that transparency is essential to the Court's fulfillment of its duty . . . to exercise control over [this collective] action and to enter appropriate orders governing the conduct of counsel and [the] parties. . . . Absent Court supervision, [the p]laintiffs' issuance of further mailings may well present a situation in which it is difficult, if not impossible, to 'unscramble the egg.'

*Id.* at 7 (citations and most internal quotations omitted).

For these reasons, the Court in Taylor ordered that, "should [the p]laintiffs determine that the issuance of additional mailings is necessary, their counsel shall: advise opposing counsel; provide via facsimile a sample copy of the proposed mailing to opposing counsel and the Court;

and call opposing counsel and Chambers to schedule a telephone conference so that the Court promptly may consider [the p]laintiffs' proposed course of action." *Id.*

While Plaintiffs may hasten to add that no analogous order was entered here, this Court's views regarding the mass transmission of unsupervised, post-Notice mailings hardly has been a mystery. *See* discussion *supra*; *see als*o Order dated Oct. 29, 2009 (Doc. 133 in 09-377) at 1-2 n.1 (stating that "[the p]laintiffs' right to transmit mailings after the issuance of Court-approved notice is not as clear as their counsel suggests," citing Jackson v. Papa John's USA, Inc., 2009 WL 650181, *2 (N.D. Oh. Mar. 10, 2009) (once "[the c]ourt has approved of a communication to potential opt-in class members," "[o]ther communications from [the parties] during the pendency of the notice period may cause confusion or undermine the authority of the Court-approved communication") *and* Ruggles v. WellPoint, Inc., 591 F. Supp.2d 150, 164 (N.D.N.Y. 2008) ("to bring order and efficiency to the notice process, the court-controlled mechanism should trump any attorney driven notice and resolve any post-conditional certification notice in favor of the Court's controlled process"; "[f]ailure to limit notification to a single process would be dissonant with the intent of the FLSA statute that the Court play a significant role in prescribing the terms and conditions of communications from the named plaintiffs to the potential members . . . on whose behalf the collective action was commenced")).

In the absence of contemptuous behavior, it was Plaintiffs' counsel's prerogative to weigh the perceived benefits of zealous advocacy against the potential loss of good will and trust before the judicial officer presiding over their litigation. Given the absence of an order like the one in Taylor here, however, the Court is constrained to conclude that the sanctions requested by Defendants are unwarranted.

As another district court recently observed, there is little precedent "that addresses the precise scenario at issue . . ., namely communications that are alleged to be misleading and in conflict with the court-approved notice"; most of the cases "involve pre-certification disputes over contact with putative class members." Howard v. Securitas Sec. Servs., USA Inc., 630 F. Supp.2d 905, 908 (N.D. Ill. 2009) (citations omitted).  Even Plaintiffs agree, however, that communications "undermin[ing] or contradict[ing] the Court's notice" are inappropriate. *See generally* Parks v. Eastwood Ins. Servs., Inc., 235 F. Supp.2d 1082, 1085 (C.D. Cal. 2002); *see also* Pls.' Opp'n Br. at 12 (citing same).

Plaintiffs' mailing appears, in context and intent, to be much as their counsel characterizes it:  a "remind[er] letter."  *Cf.* Pls.' Opp'n Br. at 3.  The letter, in its entirety, states:

Thomas & Solomon LLP<br>THE EMPLOYMENT ATTORNEYS

THIS IS NOT A NOTICE FROM A COURT

  Re:  UPMC Lawsuit

Dear _____:

  If you worked for UPMC, you may be entitled to unpaid compensation. But you may lose some or all of that recovery if you do not act quickly.

  You should have received Court authorized notice of a lawsuit pending against UPMC, along with a form allowing you to join the lawsuit.  In the event you have not received this notice, please let us know.  Alternatively, we have enclosed a form for you to sign and send back which allows you to seek to recover money, if any, obtained in this lawsuit the firm has filed for unpaid wages against UPMC.

  This is an important decision.  The Court approved notice is on our website at www.upmcclassaction.com/notice (the website is privately maintained by our law firm and its contents have not been approved by the Court). Alternatively, you may contact us directly at 1-877-272-4066 to learn more about this case.

> Be careful: Because of the statute of limitations, if you do not fill the form out, you will not be able to get recovery in the lawsuit. And if you delay filling it out past the Court ordered **deadline of September 8, 2009**, you can lose part or all of any unpaid wages you may be owed. If you join, you are not required to pay any money.
>
> Please let other current or former employees know about this case and their right to join. They, too, may be losing money every day they wait.
>
> If you have questions before joining, an attorney from our office will be glad to speak to you. All consultations on this matter are free, completely confidential, and without obligation. Please contact us.
>
> Very truly yours,
>
> [Plaintiffs' counsel's signature]

*See* Ex. 1 to Defs.' Mot. (emphasis in original).

As for the first paragraph, although the undersigned would have strongly preferred that Plaintiffs' unapproved reminder letter had identified the subject matter of the FLSA claims conditionally certified, *i.e.*, uncompensated meal breaks, the Court cannot say that the communication undermines or contradicts the approved notice. At worst, Plaintiffs' letter may encourage inattentive, ineligible employees to "opt in" regarding the conditionally certified claims, a matter that surely will be addressed by Defendants as this litigation proceeds.

The letter's second paragraph advises putative members of the Court-approved notice, and it references an enclosed opt-in form and "information sheet." Although these forms differ from the ones contained in the approved notice, the Court does not find this to demonstratively establish that Plaintiffs have undermined or contradicted the notice.[1]

---

[1] Why Plaintiffs elected to transmit "generic" opt-in and information sheets, as opposed to the ones approved by the Court, is perplexing. Should Defendants later challenge the sufficiency of any opt-in forms submitted in connection with the September 1st letter, Plaintiffs' counsel may be said to have made their own beds. *Cf.* Order dated Jun. 1, 2009 in Kuznyetsov v. West Penn Allegh. Health Sys., Inc., Civil Action No. 09-379 (W.D. Pa. 2009) (Ambrose, J.) at 6 (finding

Paragraph 3 of the letter directs recipients to a web page containing the Court-approved notice (to the exclusion, likely inadvertent, of some relatively modest clarifications directed by text-Order dated July 6, 2009), under the link "www.upmcclassaction.com/notice." Defendants argue that this web page easily may lead a recipient to Plaintiffs' counsel's website, references to which were deliberately omitted from the Court-approved notice. *See* Defs.' Br. (Doc. 287) at 3-4.

As Plaintiffs highlight, however, Defendants in this lawsuit, unlike the defendants in Taylor, have not challenged Plaintiffs' counsel's use of their website(s) or the contents thereof. *See* Pls.' Opp'n Br. at 18; Defs.' Br. at 1 n.1 (Defendants "have not [previously] sought to limit plaintiffs' communications through the media, websites, or mailed solicitations"). In Taylor, the Court held that Plaintiffs' counsel's website could not be addressed "in a vacuum," and that "[o]nly after an evidentiary hearing, at which time the parties may enjoy a full opportunity to be heard," would the Court be in a position to rule on the Taylor defendants' objections. *See* Order dated Aug. 25, 2009 (Doc. 90 in 09-377) at 6. Defendants' current Motion is not an appropriate vehicle for resolving these weighty issues.

As Plaintiffs' counsel also highlights, the web page referenced in Plaintiffs' September 1st letter contains no links to their counsel's remaining web page(s). Although a savvy computer user could modify portions of the web address to access Plaintiffs' counsel's site, the site is just as easily accessible through a "Google" search for the words "hospital" and "overtime." With any degree of motivation and diligence, a sophisticated user could find

---

similar, generic opt-in forms "so vague and ambiguous that they lack any probative value on the issue of similarly situat[ion]"; "[t]he opt-in consent forms merely [identify] the Defendant for which [the signatory] worked and that they consent to participate in the lawsuit;" "[the forms] provide no information to allow [the Court] to determine if [the signatories] are similarly situated to Plaintiffs as . . . relate[d] to the meal break deduction policy claim").

Plaintiffs' counsel's website on the internet, even if his or her knowledge was restricted to the Court-approved notice.

The remainder of the September 1st letter essentially: warns putative collective action members of the potential adverse consequences of delaying their decision (*i.e.*, the running of the statute of limitations and opt-in period); encourages recipients to advise other UPMC employees of their potential rights; and invites recipients to contact Plaintiffs' counsel with any questions. *See* Sept. 1st Ltr. at ¶¶ 4-6. Although these statements undoubtedly veer into the realm of solicitation, the Court finds nothing contained in them that specifically undermines or contradicts the contents of the approved notice.[2]

In sum, Plaintiffs' counsel have appeared determined to "push the envelope" in connection with their post-Notice communications with putative collective action members. Given the relative uncertainty in the law, as well as the absence of an order requiring judicial supervision over Plaintiffs' mailings before they were sent, the Court is constrained to conclude that sanctions are not warranted.[3] The Court would add, however, that the numerous disputes resulting from Plaintiffs' mailings serve only to emphasize the need for Court supervision over

---

[2] In support of the letter, Plaintiffs' counsel once again turn to their expert, Geoffry C. Hazard, Jr., who has opined that the September 1st communication complies with all "governing legal and ethical standards." *See, e.g.*, Pls.' Opp'n Br. at 3. Professor Hazard's credentials notwithstanding, there is nothing he can say to modify the Court's non-delegable duty to exercise control over this collective action and to enter appropriate orders governing the conduct of the litigants.

[3] Even were the Court to consider entering sanctions, the ones requested by Defendants are unfitting. *See, e.g.*, Defs.' Br. at 4 (asking that appointment of Thomas & Solomon LLP as counsel for collective action "be revoked, so that the fitness of this firm to serve in that capacity can be evaluated if and when it is decided to have a collective action"). This Court already has determined that Plaintiffs' counsel are qualified and can adequately represent the interests of the putative collective action members. *See* Order dated Sept, 17, 2009 (Doc. 263) at 1. At most, the contents of this Order may be seen as reflecting a disagreement regarding the degree to which the duty to zealously represent ones' clients should be tempered by the desire to maintain the trust and confidence of the Court.

the FLSA notice process.  *See* discussions *supra*; *see also id.* ("to bring order and efficiency to the notice process, the court-controlled mechanism should trump any attorney driven notice and resolve any post-conditional certification notice in favor of the Court's controlled process").[4]

Consistent with the foregoing, the Court will not enter sanctions against Plaintiffs or their counsel, nor does it decide whether or not Plaintiffs' transmission of the September 1st letter was constitutionally protected.  *Cf.* Ruggles, 591 F. Supp.2d at 164 (declining to rule on plaintiffs' extra-judicial notice efforts, despite "[an alleged] litany of abuses and misleading statements," and relying instead on continued judicial supervision).  Rather, the Court hereby issues the same directives as in Taylor, modified to fit the circumstances in this case.  Specifically, should the named Plaintiffs (or Defendants),[5] in advance of the Case Management Conference scheduled for November 13, 2009, determine that the issuance of additional mailings is necessary, their counsel shall:  advise opposing counsel; provide via facsimile a sample copy of the proposed mailing to opposing counsel and the Court; and call opposing counsel and Chambers to schedule a telephone conference so that the Court promptly may consider the proposed course of action.[6]

---

[4] Although the undersigned has and will continue to respect Plaintiffs' First Amendment rights, numerous decisions have recognized that those rights must be read in harmony with the Court's duty to "monitor[ the] preparation and distribution" of notice to "ensure that it is timely, accurate and informative."  *See generally* Hoffman-LaRoche, Inc. v. Sperling, 493 U.S. 165, 171-72 (1989).  The need for temperance would appear only heightened where, as here, Defendants have been compelled to provide contact information regarding putative collective action members through the litigation process.  This Court has made every effort to timely address the issues of conditional certification, approval of notice, and prompt transmission of the same.  Plaintiffs' counsel's efforts to inject themselves into the notice process, outside the scope of judicial supervision, cannot be canonized merely through an invocation, from the highest mountain, of the First Amendment.

[5] Excluded from the parameters of this Order is the request of presumed opt-in plaintiff Mary C. Henderson for the issuance of corrective notice.  *See* Doc. 304.  Ms. Henderson's Motion will be addressed by separate adjudication.

[6] According to Plaintiffs, the opt-in period for the most recently noticed putative collective action members expired on October 23, 2009.  *See* Doc. 282 at ¶ 2.  The instructions above are intended to preserve the *status quo*, as now established, until such time as the Court and parties

Prior to the November 13th Conference, the parties shall meet and confer in an attempt to reach agreement on what communications may be appropriate in the future. At the Conference, the parties shall present to the Court any stipulated agreements they have reached regarding prospective communications, and any limitations thereon, and they shall be prepared to articulate their positions on remaining differences.

Consistent with the foregoing, Defendants' Motion for Sanctions (**Doc. 286**) is **DENIED**, and the parties and their counsel are bound by the conditions recited above.

IT IS SO ORDERED.


November 4, 2009                                     s/Cathy Bissoon
                                                     Cathy Bissoon
                                                     United States Magistrate Judge
cc (via email):

All Counsel of Record

---

can further address potential communications with putative collective action members moving forward.