**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**


KAREN CAMESI, *et al.*,       )
                                     )
               Plaintiffs,       )     Civil Action No. 09-85J
                                     )
    v.                       )     Magistrate Judge Bissoon
                                     )
UNIVERSITY OF PITTSBURGH     )
MEDICAL CENTER, *et al.*,      )
                                     )
          Defendants.    )


## ORDER

Consistent with the discussions below: Plaintiffs' Motion to Compel Discovery (Doc. 358) will be granted in part, and denied in part; Plaintiffs' Motion for Sanctions (Doc. 365) will be denied; Defendants' Motion for Involuntary Dismissal of certain putative collective action members (Doc. 363) will be granted, as described herein; and Defendants' Motion to Compel Discovery (Doc. 370) will be granted, consistent with this Order.


**A.**    **Plaintiffs' Motion to Compel (Doc. 358)**

The bases for Plaintiffs' Motion are detailed in the Affirmation of one of their lawyers. *See* Doc. 360. Defendants' Opposition Brief (Doc. 368) responds to the Affirmation by category of Plaintiffs' discovery requests. The Court will follow Defendants' framework.


**1.**    **"Documents or Communications that Defendants May Use to Support Their Claim that the Case Should Not Be Certified"**

Defendants' objection based on work-product privilege, *see* Defs.' Opp'n Br. at 3-4, is overruled. In Sporck v. Peil, 759 F.2d 312 (3d Cir. 1985), relied upon Defense counsel, "[t]he documents [in question] already [had] been turned over," "any relevant facts contained

[therein] had already been discovered," and the only benefit that could be obtained by reviewing the selection of documents "was an insight into [counsel's] legal strategy." Directory Dividends, Inc. v. SBC Commc'ns, Inc., 2003 WL 23208804, *2 (E.D. Pa. Dec. 31, 2003) (analyzing Sporck). Here, Plaintiffs have reason to question whether all documents upon which Defendants will rely have been produced, *see* discussion immediately *infra* regarding initial disclosures, and the Court concludes that production is appropriate under the circumstances. *See* Directory Dividends (ordering similar production, and collecting cases holding same).

Along the same lines, certain documents withheld by Defendants are subject to disclosure under the initial disclosure requirements of Federal Rule of Civil Procedure 26(a)(1)(A)(ii). That Rule requires the production of "a copy -- or a description by category and location -- of all documents . . . that the disclosing party . . . may use to support its claims or defenses." *Id.* The "sample pay stub" offered by Defense counsel at named-Plaintiff Lori Shaffer's deposition, for example, is a document that Defendants "may," and indeed have, "use[d in] support [of their] . . . defenses." *See* discussion *infra* regarding Pls.' Mot. for Sanctions (addressing Ms. Shaffer's deposition). Plainly, such documents must be disclosed to Plaintiffs' counsel as soon as it becomes evident that they may be used in support of Defendants' defenses. To reveal such documents for the first time during the course of a deposition plainly rubs against the spirit of Rule 26's disclosure requirements.

At least with respect to documents, Plaintiffs' discovery requests in large part encompass the same materials Defendants are required to disclose under Federal Rule 26(a)(1). The Court is unsatisfied that further productions will reveal Defense counsel's mental impressions.[1]

---

[1] Plaintiffs have not requested, nor does the Court demand, that Defendants produce documents in a manner that reveals "their exhibit selection process" and/or "evaluation of the probative value of evidence." *Compare* Defs.' Opp'n Br. at 3 *with* Fed. R. Civ. P. 34(b)(2)(E)(i)

Moreover, to the extent that Defendants refuse production of specific documents under the work-product doctrine, their counsel must, **within ten calendar days of this Order**, produce to Plaintiffs' counsel a privilege log identifying those materials and the bases for withholding production.

Finally, Plaintiffs take issue with Defendants' production of documents that "concern[], support[] or contradict[] Defendant[s'] contention that any Hourly Employee is subject to an individualized defense." *See generally* Defs.' Opp'n Br. at 4. Plaintiffs clarify that they seek "any . . . documents," other than those reciting the FLSA laws generally, regarding the 75 collective action members chosen by the parties for the purposes of limited discovery. *See* Pls.' Counsel's Aff. at ¶ 11; Defs.' Opp'n Br. at 4-5 & n.6.

Prior misunderstandings and failed attempts to meet and confer notwithstanding, Defendants shall produce responsive documents, as contemplated in this Section, regarding the opt-ins currently agreed upon by the parties **within ten calendar days of this Order**. *See* discussions *supra* (addressing Defendants' production obligations regarding both discovery and initial disclosures).

### 2. Records of Employee Compensation

Defendants have agreed to produce compensation records dating back to April 1, 2006, *i.e.*, three years prior to the initiation of this lawsuit. *See* Defs.' Opp'n Br. at 5-6 (maximum period of recovery under FLSA is three years). For the purposes of limited discovery, the Court agrees that this is an appropriate time frame.

---

("[a] party must [either] produce documents as they are kept in the usual course of business or must organize and label them to correspond to the categories in the request").

Defendants' objection to producing employees' W-2s, 1099s, FICA, FUTA and tax records, *see* Defs.' Opp'n Br at 6, is overruled. *See generally* <u>Leeds v. Axis Gloucester City Storage</u>, 2009 WL 1706547, *2 (E.D. Pa. Jun. 16, 2009) ("[r]elevancy is construed . . . liberally in discovery").[2]

Finally, Defendants shall, **within five calendar days of this Order**, provide to Plaintiffs written explanations of the columns identified in their payroll records (*i.e.*, "Comp Rate Used," "Rate Used on Paycheck Data," "Other Hrs" and "Other Earns"). *See* Pls.' Counsel's Aff. at ¶ 15.

### 3. <u>Documents Regarding Defendants' Corporate Structure</u>

Among other things, Defendants have objected to the aforementioned discovery requests based on relevancy and the limited scope of current discovery. *See* Defs.' Opp'n Br. at 7-8. Defendants have declined, however, to stipulate to the "irrelevancy" of corporate structure matters at this stage in the proceedings. *See id.*

The Court is inclined to agree with Defendants that Plaintiffs' requests regarding corporate structure are beyond the scope of limited discovery. *See* CMO dated Nov. 20, 2009 (Doc. 334) at ¶ 4 (discovery is now "limited to collective action certification issues on the claims conditionally certified in this FLSA collective action"). At this point, the Court has little reason to believe that matters of corporate identity/structure will form bases for Defendants' decertification request. *Compare generally* Order dated Aug. 3, 2009 (Doc. 206) at 2 (highlighting affidavit of Charles Donina, "Senior Director[ of] Compensation, HRIS and Payroll for UPMC," stating that Kronos meal break system was utilized by all "entities that are named as

---

[2] Unless otherwise directed, all ordered productions, including those implicitly contemplated through the overruling of Defendants' objections, shall be made **within ten calendar days of this Order**.

[D]efendants in this case") *with* <u>Kuznyetsov v. West Penn Allegh. Health Sys., Inc.</u>, 2009 WL 1515175, *1-2 (W.D. Pa. Jun. 1, 2009) (Ambrose, J.) (at decertification stage, focus remains on similar situation of collective action members) (citations omitted).  If Defendants will not rely on issues involving corporate identity/structure in any decertification request, Defendants need only so respond and state that Plaintiffs' requests go beyond the scope of limited discovery.

If, however, Defendants <u>do</u> intend to advance matters of corporate structure/identity for the purposes of decertification, they must promptly advise Plaintiffs' counsel so that the parties may meet and confer to discuss the proper scope of Plaintiffs' discovery requests and Defendants' corresponding productions.

Defendants shall either respond to or notify Plaintiffs' counsel, as specified above, **within five calendar days of this Order**.

### 4.　　Defendants' Policies and Practices

Defendants have agreed to produce compensation policies dating back to 2004. *See* Defs.' Opp'n Br. at 8-9.  This will suffice.  *Cf. generally* discussion *supra* (limiting production of compensation records to those dating back to April 1, <u>2006</u>).

As for "iterations or drafts" of documents Defendants already have agreed to produce, Defense counsel has represented, subject to the mandates of Federal Rule 11(b), that no such documents exist.  *See* Defs.' Opp'n Br. at 9.  If the documents do not exist, they do not exist, and there is little more the Court can do to address Plaintiffs' asserted grievance.[3]

---

[3]  This ruling extends to all documents requested by Plaintiffs that Defendants assert do not exist. *See, e.g.*, Defs.' Opp'n Br. at 10 (no earlier drafts of Kronos Training Manual exist); *id.* at 11 n.9 ("actual[,] filled-out records" of Kronos variance sheets and time-off request forms no longer exist); *id.* at 12 (only four collective action members were required to complete handwritten time sheets, and those have been produced).  The Court's analysis also is informed, however, by its

Plaintiffs next assert that Defendants "have not produced any collective bargaining agreements, employee handbooks, or handwritten time sheets" for the "vast majority" of the 79 collective action members addressed in discovery (*i.e.*, the four named Plaintiffs, plus the parties' 75 agreed upon opt-ins). *See* Pls.' Counsel's Aff. at ¶ 19. Defense counsel responds that they have been supplementing productions "as [additional documents are] located." *See* Defs.' Opp'n Br. at 10-11 ("Defendants need to locate and produce documents for 79 different employees in hundreds of different departments and tens of different locations[; i]t takes time to undertake such a large endeavor").

While the Court is not entirely unsympathetic to Defendants' situation, there comes a point, even in complex litigation such as this, where the refrain, "don't worry, we'll get it to you" no longer suffices. The deadline for limited discovery in this case was established in November, 2009, and it has been extended multiple times. *See* Orders filed on Nov. 20, 2009 (Doc. 334), Jan. 7, 2010, and May 4, 2010. Although the parties' discovery efforts have been evolving, contentious, and have required multiple conferences, the Court and parties must observe meaningful boundaries regarding how long the production of all discoverable and responsive materials can wait.

While Defendants have repeatedly trumpeted their production to date of "over 21,000 documents," this seems hardly an overwhelming number given the complexity of this case and the number of parties involved. In their Firm website, Defense counsel emphasize their "broad experience in complex, multifaceted civil litigation," including their use of "computerized document management, an invaluable tool for organizing the massive number of documents

---

holding that Defendants' investigations regarding the existence of responsive materials must be objectively reasonable under the circumstances. *See* discussion immediately *infra* in text.

generated in complex litigation and helping to reduce the cost of litigation." *See* web page regarding "Litigation," at www.eckertseamans.com.

To be sure, the nature of this case has required Defense counsel to act fluidly, and the agreed upon productions have, at times, presented a "moving target." *See generally, e.g.,* Defs.' Opp'n Br. at 10 n.8 (noting that "the identities of the [parties'] 75 opt-ins" have changed). The Court has reached a point, however, where Defendants' broad and repeated assertions of their duty/right to supplement responses has begun to wear thin. While it is true that parties have an obligation and right to supplement their productions and initial disclosures, it also is true that productions must be objectively reasonable along the way. *See* <u>Syncsort Inc. v. Innovative Routines Int'l, Inc.</u>, 2008 WL 1925304, *23 (D. N.J. Apr. 30, 2008) (under Rule 26(g), discovery responses and objections include "certif[ication] that[,] to the best of the signer's knowledge, information, and belief, formed after a reasonable inquiry, the disclosure is complete and correct as of the time it is made") (citation omitted); <u>Leonard v. Univ. of Delaware</u>, 1997 WL 158280, *6 (D. Del. Mar. 20, 1997) ("reasonable inquiry" under Rule 26(g) "is an objective standard," measured "under the circumstances" presented) (citation to quoted source omitted); *see also generally* <u>Goethe v. California D.M.V.</u>, 2009 WL 3568624, *1 (E.D. Cal. Oct. 27, 2009) ("[a] party . . . cannot reserve the right to produce further documents indefinitely"; "[t]he duty to supplement is not a license to unduly delay production or [to] get around to discovery obligations when convenient"). Although the Court does not find Defendants' productions to date insufficient, *per se*, Defense counsel now are on notice that future invocations of the right/duty to supplement will be viewed with scrutiny under the objective reasonableness standard, based on the specific circumstances in this case.

These circumstances entail highly demanding litigation, the breadth and complexity of which is readily apparent. Defendants believe, and the Court has every confidence, that their counsel possess sufficient knowledge, expertise and resources to timely and efficiently handle this type of case. These expectations inform the Court's view of Defendants' discovery and disclosure efforts hereafter.

Consistent with the foregoing, Defendants shall, **within ten calendar days of this Order**, produce all documents responsive to Plaintiffs' "terms and conditions of employment" requests regarding the collective action members currently at issue in discovery. Only for good cause shown under the objective reasonableness standard (or by agreement of the parties), may this or any other deadline herein be extended.

The parties next address Plaintiffs' request for "documents concerning policies or practices with respect to recording work time for hourly employees." *See* Pls.' Counsel's Aff. at ¶¶ 20-21. Defendants have provided to Plaintiffs some clarifications/explanations regarding its productions. *See* Defs.' Opp'n Br. at 10-11 & n.9. Otherwise, Defendants' burdensomeness and related objections are overruled. Thus, Defendants shall produce any remaining, responsive documents **within ten calendar days of this Order**.

### 5. Documents Regarding Training and Instruction for Time Recordation

In this regard, Defendants have identified for Plaintiffs the Bates numbers corresponding to their productions. *See* Defs.' Opp'n Br. at 11. Defendants' agreement to supplement their responses is governed by the objective reasonableness standard referenced above.

### 6. <u>Documents Concerning Time Employees Worked During Meals</u>

Defendants again represent that, to the extent that responsive materials exist, they have been produced. *See* Defs.' Opp'n Br. at 12.

Defendants are not required to produce "swipe data," beyond that which is reflected in the Kronos records already identified. *Cf. id.* To the extent that other responsive materials have been or will be uncovered, Defendants' general objections based on vagueness, overbreadth and oppression are overruled.

### 7. <u>Efforts to Report Time Worked at Meals</u>

Plaintiffs assert that, to the extent that Defendants' Kronos records reflect "pay adjustments" for time worked during meal breaks, Defendants have failed to produce underlying reports or records supporting those adjustments. The Court understands Defendants to represent that, to the extent such underlying documentation exists, it has been produced. Otherwise, counsel are referred to the Court's rulings regarding objective reasonableness.

### 8. <u>Documents Concerning Defendants' Labor Costs and Budget</u>

The Court agrees with Defendants that these requests are beyond the scope of limited discovery. Even assuming that the requested materials may support Plaintiffs' underlying FLSA claims on the merits,[4] Plaintiffs' counsel have failed to demonstrate how this bears upon the certification standards at issue in this stage of the discovery process.

---

[4] *See* Pls.' Counsel's Aff. at ¶ 26 (highlighting Plaintiffs' theory that Defendants created "an incentive for supervisors to pressure or encourage employees to not report time worked during [meal breaks]").

9. **Documents Reflecting Communications Regarding the Subject Matter of This Action**

Defendants represent that they are unaware of any non-attorney-client privileged documents that have not already been produced. *See* Defs.' Opp'n Br. at 13-14. Defense counsel further contend that their production of a privilege log "would require Defendants to identify every communication between counsel and employees/supervisors relating to this very complex and intensive litigation," and that "[s]uch an undertaking would be enormously burdensome and enormously costly." *Id.* at 14. Plaintiffs' counsel clarify that they do not seek attorney-client privileged documents, "but rather[, other] communications concerning the subject matter of this action -- that is, concerning meal breaks, time worked during meal breaks and payment for time worked during meal breaks." *See* Pls.' Counsel's Aff. at ¶ 27.

The Court questions Defendants' suggestion that, even in highly complex litigation, the failure to keep an ongoing privilege log somehow is excusable. If legal authority to this effect exists, Defense counsel have not identified it. *Cf.* Fed. R. Civ. P. 26(b)(5) (addressing procedures for privilege claims, and failing to establish exceptions for complex litigation).

In any event, Plaintiffs have made clear that they do not seek the production of attorney-client privileged materials. *See* discussion *supra*. If non-privileged communications between Defendants and/or their agents exist, or are uncovered through objectively reasonable investigation, they must be produced.[5]

---

[5] Although Plaintiffs' counsel do complain of Defendants' failure to track attorney-client privileged documents, Plaintiffs' primary concern appears to be whether Defendants have produced all responsive, non-privileged materials. *See* Pls.' Counsel's Aff. at ¶ 27. Assuming, as Defendants have indicated, that their counsel have not kept a privilege log, the Court questions whether the rectification of this omission will prove a good use the parties' remaining discovery time and resources. As indicated above, however, Defendants assertion of the work-product privilege has been overruled, and, to the extent that specific documents have been withheld on that basis, they must be identified in a privilege log. Finally, and further potential

10.     **Implementation of Defendants' Meal Break Deduction Policy**

Plaintiffs' requests are beyond the scope of limited discovery, and Defendants' objection is sustained.  *See* discussions *supra*.

11.     **Interrogatories Regarding Identity of Co-Workers and Superiors**

Defendants' objections to Plaintiffs' current requests, based on overbreadth, burden and expense, are sustained.  Assuming any responses by Defendants are necessary and appropriate, the production must balance Plaintiffs' needs for information regarding superiors and Defendants' concerns regarding undue burden and expense.

It would appear that Plaintiffs seek information regarding collective action members' superiors who were involved, or acquiesced, in the employees' working through meal breaks, or the employees' being compensated, or not compensated, for the same.  It also seems reasonable to believe that, in some or many instances, this information will be equally available through the recollections of the individual collective action members.  This whole line of inquiry, moreover, may go more to the underlying merits of Plaintiffs' claims.  *See* discussions *supra* (sustaining certain of Defendants' objections for same reason).

These things being said, the Court cannot currently rule out Defendants' raising the collective action members' lack of knowledge regarding, or inability to recall, their relevant superiors, for the purposes of seeking decertification.  Unless Defendants provide clear assurance that this will not be the case, some mechanism for discovering the information must be provided.

---

delays notwithstanding, Plaintiffs are free to file another motion should they remain unsatisfied with Defendants' (non)compliance with Federal Rule 26(b)(5).

Accordingly, **within five calendar days of this Order**, the parties shall confer and discuss the actual need, and the discovery mechanisms for securing, relevant information regarding the collective action members' superiors.[6]

### 12. Plaintiffs' Purported "Laundry List" of Information Not Produced by Defendants

a. Compensation Manuals

Defendants represent that no prior drafts or "iterations" of the relevant materials exist. *See* Defs.' Opp'n Br. at 17.

b. Infonet

Defendants represent that all relevant documents from this internal website have been produced. *See id.* at 17-18. Plaintiffs' arguments regarding electronically stored information ("ESI") will be addressed in greater detail below.

c. Policy and Procedure Manual

**Within three calendar days of this Order**, Defendants shall produce the manual in its entirety.

---

[6] To the extent that Plaintiffs seek the identities of supervisors, or any other individuals, because Defendants identified them as "likely . . . hav[ing] relevant information about [P]laintiffs' claims for unpaid wages resulting from missed or interrupted meal breaks," *see* Pls.' Counsel's Aff. at ¶ 30, Defendants must, **within ten calendar days of this Order**, ensure their full compliance with the initial disclosure requirements in Federal Rule 26(a)(1)(A)(i). *See id.* (parties must reveal name of "each individual likely to have discoverable information . . . that the disclosing party may use to support its . . . defenses"). Although Defendants purportedly "object[ed]" to the burdensomeness of making initial disclosures regarding all supervisors, *see* Defs.' Opp'n Br. at 15-16, n.10, Federal Rule 26(a)(1) supplies no grounds for such an "objection." *See id.* (unless "otherwise stipulated or ordered by the court, a party must [make the requisite disclosures]").

       d.       <u>Grievance Procedure and Hotline</u>

**<u>Within ten calendar days of this Order</u>**, Defendants shall produce any documents in this regard, consistent with the clarifications in Plaintiffs' Affirmation. *See id.* at ¶ 31, pg. 10.

       e.       <u>Instructions on Cancelling Auto-Deduct</u>

Defendants represent that they have produced the documents containing this information. *See* Defs.' Opp'n Br. at 18.

       f.       <u>Quarterly Self-Audits</u>

Defendants represent that no self-audits were made prior to 2008, and that they will reproduce any documents whose content has been "cut off" through copying. *See id.* at 18-19.

       g.       <u>FLSA Training</u>

Defendants have agreed to supplement their production, *see id.* at 19, and counsel are referred to the Court's rulings regarding objective reasonableness.

       h.       <u>FLSA Fact Sheets</u>

Defendants represent that they have produced this information, and they have provided Bates numbers corresponding to their production. *See id.*

       i.       <u>E-Mail Communications With Managers</u>

Defendants have agreed to supplement their productions. *See id.; see also* discussion *infra* regarding ESI.

j.   Internal Investigations

Defendants represent that they have produced "all such documents of which they are aware." *See id.* Counsel are referred to the Court's rulings above regarding objective reasonableness.

k.   Procedures to Report Missed Meal Breaks

*See* the Court's ruling, immediately *supra*.

**13.   Records of Work Performed During Meal Breaks**

*See* the Court's rulings, immediately *supra*.

**14.   Information Regarding the Creation, Implementation, *et cetera*, of Defendants' Compensation Policies**

Plaintiffs' request goes beyond the scope of limited discovery. *See* discussions *supra*.

**15.   Complaints Regarding Pay Issues**

Defendants represent that they have identified all investigations of which they are aware. *See* Defs.' Opp'n Br. at 21. As Plaintiffs note, however, Defendants do not purport to have identified complaints that did not result in formal investigations. *See id.* **Within ten calendar days of this Order**, Defendants shall supplement their responses, under the objective reasonableness standard.

**16.   Various Policies and Practices Regarding Meal Breaks**

Defendants represent that they have produced all responsive information of which they are aware. *See id.* at 22. To the extent that Defendants have referenced "numerous ad hoc

memoranda or meetings" regarding the matter, but have not specifically included them in their discovery responses, Defendants shall do so **within five calendar days of this Order**.

17. **ESI**

Having carefully considered all of counsel's arguments, the Court hereby directs the parties to meet and confer to resolve their remaining disputes, consistent with the following instructions.

At a minimum, Defendants must ensure that, for all of their files originally stored in electronic form, they have produced those files in a "searchable" format. Preferably, and absent a clear showing of substantial hardship and/or expense, Defendants shall supplement their production by reproducing ESI in its native format. Although a clear showing of undue hardship and/or expense may excuse Defendants' production in native format, the fact that such a production may be more useful or cause less expense to Plaintiffs obviously will not.

Furthermore, Defendants have failed to convince the Court that their metadata should not be produced. To the extent that Plaintiffs purportedly did not ask for it sooner, the Court finds this omission excusable given Plaintiffs' repeated, good faith requests to meet and confer. Even absent this conclusion, and given the nature of Defendants' Kronos and related electronic storage systems, Defendants' production will promote the interests of justice.

Finally, the Court is persuaded by Plaintiffs' arguments regarding the relative paucity of ESI produced by Defendants, and the seemingly dismissive nature of Defense counsel's responses to Plaintiffs' ESI proposals. The Court joins Plaintiffs in questioning the degree to which Defendants have taken seriously their responsibilities regarding this relatively new, but clearly important, form of evidence. *Cf. generally* Mirbeau v. City of Lake Geneva, 2009 WL 3347101, *1 (E.D. Wis. Oct. 15, 2009) ("the [F]ederal [R]ules take an expansive

approach toward discovery of ESI," and it "stands on equal footing with discovery of paper documents") (citation to quoted source omitted).

**Within seven calendar days of this Order**, opposing counsel shall meet and confer to discuss the production of ESI, consistent with the rulings above. As appropriate or necessary, counsel should be prepared to seek input from persons possessing technical expertise to assist them. Should the parties prove unable to reach agreement on how to proceed, the Court will convene a conference and direct them. The Court nevertheless believes that, given the guidance offered above, further judicial intervention should be unnecessary.

**B.**     **Plaintiffs' Motion for Sanctions (Doc. 358)**

This Motion relates to Defense counsel's deposition of named-Plaintiff Lori Shaffer. Specifically, the Motion addresses: (1) Defense counsel's handling and production of documents; and (2) counsel's interactions with Ms. Shaffer during the deposition.

**1.     Defendants' Handling and Production of Documents**

Defendants' introduction of non-Bates stamped documents during Ms. Shaffer's deposition, although not sanctionable, is bad form. This is especially true given the highly complex and document-intensive nature of this litigation and the plethora of discovery conflicts that predated the deposition.

The Court understands that lawyers commonly use "working copies" of documents for internal purposes. Nevertheless, counsel's deposition preparation can, and should, include ensuring that true, final, Bates-stamped documents have been gathered for introduction.[7]

---

[7] Indeed, preparing documents for a deposition instinctively should pose the threshold questions, "did we produce this; if not, why; and should we?" *See generally* discussions *infra* regarding Defendants' introduction of documents not previously produced to Plaintiffs.

Defense counsel only compounded the problem by failing to secure the attendance of a lawyer or lawyers who were sufficiently familiar with the documents introduced at the deposition. While Defense counsel may have assigned a single lawyer as the "gatekeeper" of official productions, that lawyer's unavailability during Ms. Shaffer's deposition is no excuse for Defendants' flat-footedness. Of course, this would not have been an issue had counsel engaged in due diligence regarding the documents in question (*i.e.*, making sure counsel had the right documents, confirming that the documents had been produced in discovery or through initial disclosures and securing Bates stamped copies).

Defense counsel's umbrage with Plaintiffs' objections to deposition documents was grossly, if not comically, misplaced. Plaintiffs' inquiries and objections were entirely reasonable under the circumstances, and the Court expects that these types of problems will not resurface in the future.

Turning to the relevant documents, the first set is Defendants' "Time Entry Submission Policy." *See* Defs.' Opp'n Br. at 4-5. Defense counsel concede that: Defendants' production included the 2009 version; Defendants inadvertently failed to produce the 2007 version; and Defendants introduced the 2007 version at Ms. Shaffer's deposition. *See id.*

To be sure, the 2007 and 2009 versions of the document appear materially similar, and the Court has no reason to believe that Defendants' omission was purposeful. As referenced below, however, it is the cumulative effect of this and Defendants' other shortcomings that make Plaintiffs' skepticism reasonable.

Next is Ms. Shaffer's "sample pay stub." Defendants consistently have maintained that employee pay stubs are not responsive to Plaintiffs' discovery requests and are cumulative of the Kronos data already produced. *See id.* at 6-7. Defendants' reliance on the pay stub during

Ms. Shaffer's deposition, however, is inherently inconsistent with their failure to disclose that document through initial disclosures.  *See* discussion *supra* in text.  Defendants cannot have it both ways, and they must either produce all documents that they "may use" in support of their defenses, or refrain from using documents not identified in their initial disclosures.[8]

Last is the "No Meal Break Ticket" introduced at Ms. Shaffer's deposition. Defense counsel concedes that, although this document was thought to be produced, it "slipped through the cracks."  *See* Defs.' Opp'n Br. at 8.  Although the Court declines to enter sanctions on this ground, Defendants' omission speaks to a larger issue regarding their productions.

Of the six documents introduced at Ms. Shaffer's deposition, three of them were the subject of production deficiencies.  Two were inadvertently withheld from production, and the third clearly was required to be identified through Defendants' initial disclosures. *See* discussions *supra*.  Frankly, the handling of the Shaffer deposition exhibits was sloppy. Under the circumstances, Plaintiffs' concerns regarding the carefulness and sufficiency of Defendants' production efforts were entirely reasonable.  Although Defense counsel attempt to diffuse these concerns by pointing fingers and making excuses, the Court must question how they would respond to similar deficiencies on behalf of an opposing party or counsel.

In the end, the Court declines to enter sanctions based on the documents introduced at Ms. Shaffer's deposition.  This Order, however, should serve as a wake-up call to Defendants

---

[8]  The Court imagines that Defendants' production of all pay stubs, even limited to 79 collective action members, may be an onerous task.  It appears questionable whether the benefits of Defendants' using the pay stubs will outweigh the costs of producing them.  To be clear, though, if Defendants persist in using pay stubs in defense of their case, they must produce not only selected pay stubs, but all existing pay stubs for the relevant collective action members; Defendants will not be permitted to "cherry-pick."  **Within five calendar days of this Order**, the parties shall confer and come to an understanding regarding how they will proceed.

that they must tighten up their discovery practices, and they should not expect future, similar instances to be greeted with leniency.

### 2. Defense Counsel's Interactions With Ms. Shaffer

Counsel will not be sanctioned in this regard. The deposition transcript reveals that, with respect to the "after-hours" timing of the deposition, Defense counsel's "sparring" was directed to Plaintiffs' counsel, not Ms. Shaffer. *See* Dep. Tr. (filed under Doc. 367-1) at 33-34 ("I am talking to [Plaintiffs' counsel; y]ou need not get involved in this altercation"). Ms. Shaffer interjected that the timing of the deposition resulted from the serious illness of an immediate family member. *See id.* at 37-38. In the Court's view, the squabble regarding deposition timing resulted from an unfortunate and unexpected confluence of events. Defense counsel later apologized, and there is little benefit to revisiting the issue.

Otherwise, portions of Defense counsel's examination of Ms. Shaffer may fairly be described as "grumpy." If the Court entertained sanctions in every such instance, however, it would have little time for other business. It is sufficient to remind counsel of their duties to maintain decorum and civility throughout the course of this litigation, especially with respect to their interactions with opposing parties and witnesses.

### C. Defendants' Motion for Involuntary Dismissal of Certain Putative Collective Action Members (Doc. 363)

At a conference on April 5, 2010, Defense counsel highlighted that several of the collective action members who received the discovery questionnaire had failed to return them. Plaintiffs' counsel explained that many of the non-respondents had informed counsel they wished to opt out of the collective action; and that, despite Plaintiffs' thorough and repeated attempts to contact certain others, counsel were unable to do so. Accordingly, the Court directed

Plaintiffs' counsel to "promptly produce [a] list of outstanding opt-in questionnaire respondents, with explanation[s] why each outstanding questionnaire ha[d] not been produced." *See* Min. Entry for Conf. held on Apr. 5, 2010 (Doc. 356). Defendants now seek dismissal, with prejudice, of each putative collective action member who has either indicated their desire to opt-out, or who has failed to respond to Plaintiffs' repeated contact attempts. *See generally* Defs.' Mot.

Plaintiffs oppose the dismissal with prejudice of any putative collective action member; they oppose dismissal without prejudice of collective action members who have expressed their desire to opt out verbally, rather than in writing; and they oppose dismissal, of any type, regarding the members who have not been contacted. *See generally* Pls.' Opp'n Br. (Doc. 374).

With respect to those collective action members who have expressed their desire to opt out,[9] they hereby are **DISMISSED**, without prejudice to their filing separate, individual lawsuits. *See* Order dated Dec. 1, 2009 (Doc. 340) at 2-3 (where FLSA putative collective action member declines to opt in, remaining avenue of relief is to file separate legal action). To be clear, the individuals hereby dismissed will not be permitted to rejoin this action, or to join the lawsuit filed under <u>Lindsay v. UPMC</u>, Civil Action No. 09-279J (Bissoon, M.J., presiding).[10]

---

[9] These individuals are: Karen Abad, Jordan Baugher, Paula Cogan, Joyce Edmonds, Megan Ganser, Tony Hutton, Kenneth Johnson, Vera Lincheck, Renee Lukehart, Maria Mazzarini, Nancy Mogg, Julie Morrow, Paul Mullen, Herman Neidermeyer, Linda Pad, Thomas Radosh, Meredith Rawlins, Jennifer Reinhart, Donna Russman, Heather Saly, Lorena Stewart, Arlene Strandburg, Kathleen Waddell, Doris Zovack, Robin Garcia, Aaron Keith, Dawn Knoll, Richard Kozlowski, Charrina Perry, Connie Robinson, Deborah Sartore, Barbara Tribone, David Harrisson, Gaylene Massart, Lisa Pentek, Cara Sholtz and Lawrence Welch.

[10] *Cf.* Defs.' Reply Br. (Doc. 378) at 2-3 (arguing that dismissal without prejudice may allow dismissed employees to join <u>Lindsay</u>).

Rather, their rights to sue are individual;[11] and nothing in this Court's Orders shall be deemed to toll any applicable statutes of limitation.

In reaching these conclusions, the Court rejects Plaintiffs' argument that a dismissal of verbal opt-outs is premature. Plaintiffs' investigations regarding these individuals were directed by the Court over six weeks ago, as necessitated by their failure to complete required discovery. Plaintiffs' counsel have had ample time to secure written opt-out confirmations, and the responsibility to do so, assuming it exists, fell squarely on Plaintiffs' counsel's shoulders.

The relevant individuals have made sufficiently clear their desire to opt out, and they are dismissed without prejudice as described above.

For similar reasons, the Court concludes, and therefore ORDERS, that the individuals who have not responded to Plaintiffs' inquiries are **DISMISSED WITH PREJUDICE**.[12] *See, e.g.*, Williams v. Le Chaperon Rouge, 2008 WL 2074039, *1-2 (N.D. Oh. May 14, 2008) (dismissing putative collective action members with prejudice under materially similar circumstances); Bernabe v. Giant Big Apple Beer Ltd., 2007 WL 4573873, *5-6 (E.D.N.Y. Dec. 26, 2007) (same). Plaintiffs' counsel have expressly represented that "all reasonable efforts to reach [these persons] have been exhausted." *See* Doc. 373-1 at pg. 5 of 44. Although Plaintiffs suggest awaiting "court-ordered notice," there is no reason to believe that judicial intervention will prevail where all other reasonable efforts have failed.

---

[11] The Lindsay action notwithstanding, and under the specific circumstances presented here, the Court concludes that allowing the dismissed employees to severally file, or join, one action, or to join a separate existing action, would be inconsistent with the collective action procedures established under the FLSA, and it would permit putative members to play "fast and loose" with the opt-in procedures.

[12] These individuals are Loraine Beightol, Matthew Gallo and Tammy Ward.

**D.**   **Defendants' Motion to Compel Discovery (Doc. 370)**

Defendants seek to compel the depositions and questionnaire responses of specific collective action members that the parties have identified as appropriate discovery participants. *See generally* Defs.' Mot.  Defendants assert, and Plaintiffs confirm, that certain of these individuals have been unresponsive to Plaintiffs' counsel's attempts at securing their participation.  *See generally* Pls.' Opp'n Br. (Doc. 375).

On some level, the putative collective action members' seeming disinterest and/or unwillingness to participate would appear an advantage to Defendants, if not for the purposes of decertification, on the merits and in terms of potential liability exposure.  Nevertheless, this apparent benefit comes at the price of undermining Defendants' ability to now take meaningful discovery.

Having reviewed all of the arguments presented, the Court hereby directs Defendants to continue supplying to Plaintiffs the names of additional, acceptable collective action members until 75 questionnaires have been completed, and ten employees deposed.[13]

For each individual who, for whatever reason, has not or will not seasonably fulfill his or her discovery obligations, Plaintiffs' counsel shall promptly notify Defendants in writing why the individual has not, or cannot, be expected to participate.  The rulings above regarding the dismissal of opt-out and "no contact" collective action members provide clear guidance as to

---

[13]  The Court rejects Plaintiffs' suggestion that Defendants be required to accept the questionnaires and depositions of collective action members not agreed upon by the parties. Experience has shown that members who appear ready, willing and eager to participate in discovery have not necessarily reflected a representative sample.

how such individuals will be viewed by the Court, and counsel are encouraged to enter stipulations as appropriate.[14]

In addition, Plaintiffs' counsel must act with greater diligence and expeditiousness to ensure that the requisite number of questionnaires are completed, and depositions concluded, within the remaining discovery period. In light of the multiple extensions granted and the amount of time that already has passed, Plaintiffs' productivity has fallen well short of the Court's expectations.

***Finally, opposing counsel are hereby directed to work together, reasonably and in good faith, to facilitate their timely compliance with the above procedures and deadlines, and more generally, to work through their disagreements amicably whenever possible.***[15]

IT IS SO ORDERED.

May 24, 2010                                              s\Cathy Bissoon_____
                                                         Cathy Bissoon
                                                         United States Magistrate Judge

cc (via email):

All Counsel of Record

---

[14] The Court is unpersuaded by Plaintiffs' contention that non-responsive/non-compliant collective action members should be spared the consequences of their failure to cooperate. The Court-approved FLSA notice in this case made perfectly clear that opt-in members may be called upon to participate in discovery. *See* Notice (filed under Doc. 154-1) at ¶ 9 ("[w]hile this suit is proceeding, you . . . may be required to respond to written questions, participate in depositions and/or testify in court," and "[P]laintiffs' counsel has agreed to work with you so that the process is as convenient . . . as possible"). At least with respect to the questionnaires, an accommodation to which Defendants only reluctantly agreed, the Court cannot think of a less onerous form of discovery. In any event, the parties shall continue to timely address the non-responsiveness of collective action members in the same, heretofore unquestioned manner directed by the Court.

[15] In the undersigned's view, the instant Motions have presented a number of issues that could have been resolved through reasonable, good faith cooperation and communication. Communication and compromise in discovery are essential to the proper functioning of the judicial system, and the Court has neither the time nor the resources to resolve every discovery disagreement that surfaces in this or any other case.