# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAREN CAMESI, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 09-85J |
| | ) | |
| v. | ) | Magistrate Judge Bissoon |
| | ) | |
| UNIVERSITY OF PITTSBURGH | ) | |
| MEDICAL CENTER, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Defendants' Motion for a protective order regarding ESI (Doc. 401) will be denied, and Plaintiffs' Motion to compel (Doc. 403) will be granted, consistent with the discussions below.

Defendants argue that Plaintiffs have produced "zero evidence," beyond speculation, that any further responsive documents may or will be uncovered through additional ESI discovery. *See* Defs.' Br. (Doc. 402) at 2. The Court agrees with Plaintiffs, however, that it is <u>Defendants</u>' duty to ensure compliance with the Rules and Orders of Court regarding ESI. Defendants' attempts to shift their burdens, and/or the Court's focus, to Plaintiffs is particularly inappropriate given the Court's conclusions regarding Defendants' prior discovery shortcomings, generally, and their lack of ESI productions, specifically. *Compare* Order dated May 24, 2010 (Doc. 382) (finding deficiencies in Defendants' discovery productions, and "questioning the degree to which Defendants have taken seriously their [ESI] responsibilities") *with* Pls.' Br. at 5-6, 22 (noting that defendants in <u>Kuznyetsov</u> have produced, with little judicial intervention, over ten times amount of ESI materials as Defendants here, despite fact that <u>Kuznyetsov</u> involves

significantly smaller hospital system); *see also* Pls.' Br. at 3 (citing unrefuted evidence regarding Defendants' and their expert's initial lack of knowledge regarding UPMC's ESI). The Court also agrees with Plaintiffs that, given Defendants' apparent refusal to undertake ESI investigations based on objections regarding cost, Defendants are ill suited to opine regarding the existence or non-existence of additional responsive materials.

In sum, it is Defendants' responsibility to demonstrate objectively reasonable compliance with the Rules and Orders of Court regarding ESI, and they have failed to convince the undersigned that they have.

Defendants also propose that all of their ESI responsibilities may be satisfied through searches of data regarding a limited sampling of opt-in collective action members ("opt-ins"). *See* Defs.' Br. at 14-15. Defense counsel's arguments, and the legal authority they cite, presume that the universe of information in question is a series of individual data pools, drawn from a much larger set. *See id.* at 15-16. While this may be true for the purposes of opt-in specific ESI, Defendants' presumption does not account for potentially responsive materials contained in UPMC's computer systems, more generally. Management-to-management communications regarding meal break policies, for example, would not likely be contained in the ESI for lower-level, individual opt-ins.

Defendants' only articulable basis for limiting ESI to a "bottom-up" (*i.e.*, opt-in specific) approach is the potential cost of performing more thorough analyses. *See* Defs.' Br. at 7-8; *see also id.* at 9-12 (providing cost estimates of Defendants' technical expert). Plaintiffs have introduced evidence, however, indicating that Defendants are either exaggerating the potential costs of ESI or overpaying. *See* Pls.' Br. at 23-25 (citing record evidence). In any event,

2

Defendants' cost objections are overruled based on the size of the UPMC system, its assets, and its potential liability in this case.

In the Court's view, then, there are two categories of ESI subject to searching and production: opt-in specific data (*i.e.*, the contents of computer systems utilized by opt-ins and their superiors); and UPMC-wide data.

As for opt-in specific data, Defendants have agreed to conduct searches regarding ten of the 75 opt-ins selected by the parties for the purposes of limited discovery. *See* Defs.' Br. at 6. The Court agrees that, for this type of data, a ten-member sampling is appropriate, especially given Plaintiffs' assertion that "it is relatively unlikely that employees near the bottom of defendants' organizational hierarchy would be the source of the most relevant ESI." *See* Pls.' Br. at 27; *see also id.* (Plaintiffs are most interested in "ESI discussing system-wide policies or practices"). The parties, therefore, shall meet and confer regarding the selection of ten opt-ins, and their superiors, for ESI searching.

The Court is aware that the parties have disagreed regarding the degree to which ESI searches should be conducted on the opt-ins' "supervisors." *See* Pls.' Br. at 14-15. Given that opt-in specific ESI discovery will be limited to ten members, searches should be made on all ten opt-in members' superiors, and not just the members' "immediate supervisors." If the parties are unable, after good faith, reasonable efforts, to reach agreement, the scope of "opt-in superiors" discovery may, after counsel's e-mail notification to opposing counsel, be presented for judicial resolution. This dispute, and all others hereafter regarding ESI, will be resolved on cross-briefs, not to exceed five pages in length, filed within three business days of the complaining part(ies)' e-mail notice of disagreement. The parties shall attach proposed orders to their briefs, and the

Court will adopt, without additional analysis, the proposal it finds most appropriate and reasonable.[1]

The parties' disputes regarding ESI search terms shall be resolved through the same procedures identified above. The Court would note that, at least with respect to Plaintiffs' proposed search term "train!," Defendants' objection of overbreadth appears well taken. *See* Defs.' Br. at 21. Otherwise, the Court has every reason to believe that the parties here, like the ones in Kuznyetsov, can reach agreement regarding search terms. *Cf.* Pls.' Br. at 19 (discussing same).[2]

Turning to UPMC-wide ESI,[3] Plaintiffs' request that Defendants meaningfully identify potentially responsive ESI sources is consistent with, and required by, Local Rule 26.2. *See id.* at LCvR. 26.2.A.1 (prior to Rule 26(f) conference, counsel "shall . . . [i]nvestigate the client's [ESI] . . . in order to understand how such ESI is stored[, and] how it has been or can be preserved, accessed, retrieved, and produced"). Defendants' identification of, and discussion with Plaintiffs regarding, potentially responsive ESI sources likewise is required. *See id.* at LCvR. 26.2.C ("[d]uty to [m]eet and [c]onfer"). To date, Defendants' efforts to meaningfully

---

[1] For the purposes of ESI disputes only, the parties are excused from the filing of a "meet and confer" certificate, otherwise required under the Local Rules. *See* discussions *supra* and *infra* (ordering parties to confer reasonably and in good faith regarding ESI, and establishing procedures for expedited resolution of reasonable, good faith disputes that remain).

[2] If the parties in Kuznyetsov were able to reach agreement on search terms, and the myriad of other issues implicated through the process of ESI discovery, the Court questions why reasonable cooperation cannot achieve the same result here. Given the similarities between the two cases, the ESI methodologies and procedures adopted in Kuznyetsov would seem good reference points in proceeding with this case.

[3] In referencing "UPMC-wide" ESI, this Order should not be interpreted as meaning only those sources disseminated throughout the entire hospital system. Rather, this language is used to distinguish broader ESI sources from "opt-in specific" sources. Furthermore, and although the Court believes it unnecessary to explain why the cases cited in Defendants' brief are distinguishable, the court in Bryant v. Service Corporation International specifically noted that the defendants there "ha[d] already produced emails reflecting [discoverable] company-wide policies." *See id.*, 2010 WL 2231871, *1 (N.D. Cal. Jun. 1, 2010).

identify ESI sources have been insufficient, and Defendants promptly shall identify and disclose UPMC's ESI sources, consistent with Local Rule 26.2 and this Order.

Plaintiffs have identified sources of responsive ESI in Kuznyetsov, including e-mails and other communications between management, payroll, and human resources departments discussing the defendants' automatic meal break deduction policy; notes and agendas from meetings at which the policy was discussed; training meetings involving the policy; and surveys, investigations and audit reports showing how the policy has been applied. *See* Pls.' Br. at 6. To the extent that such sources exist here, Defendants shall identify them and produce responsive information. Similarly, Defendants shall identify all existing ESI sources as requested in Plaintiffs' brief, at Sections II(A)(1),[4] II(A)(2),[5] II(A)(3),[6] II(A)(4)[7] and II(A)(6).[8] *See id.* at 11-14, 15.

In identifying potentially responsive ESI sources, Defendants must provide a reasonable description regarding the type of information stored therein. *See id.* at 16. This Order should not be construed as limiting Defendants' obligations to identify and describe all sources of potentially responsive ESI in conformity with Local Rule 26.2, as tested under the "objective reasonableness" standard.

---

[4] *Id.* ("[a]ll sources where information created or accessed by the individual named [D]efendants, Jeffrey A. Romoff, UPMC's President and CEO, and Gregory Peaslee, UPMC's Vice President of Human Resources, or their assistants and other office staff, is stored").

[5] *Id.* ("[a]ll sources where information created or accessed by human resources personnel is stored").

[6] *Id.* ("[a]ll sources where information created or accessed by payroll personnel is stored").

[7] *Id.* ("[a]ll sources where information created or accessed by individuals in upper-level management positions is stored").

[8] *Id.* ("[a]ll sources where information is stored that is related to any system used for tracking employee time, such as Kronos").

Finally, limited discovery, as described in the Court's Case Management Order dated November 20, 2009 (Doc. 334), is extended from September 30, 2010 until **November 29, 2010**, and the Status Conference scheduled for October 6, 2010 at 2:15 p.m. is **RESCHEDULED** for **December 2, 2010 at 2:15 p.m.**[9] The Court has, in this and other instances, been relatively lenient in granting extensions of the limited discovery period. Given this District's goal of timely and economically resolving legal proceedings, the Court will not grant any further extensions. The good faith, reasonable cooperation of the opposing parties is critical to moving forward with Defendants' anticipated motion for decertification at some point in the foreseeable future.

      IT IS SO ORDERED.


September 20, 2010                                                  s\Cathy Bissoon
                                                                            Cathy Bissoon
                                                                            United States Magistrate Judge

cc (via ECF e-mail notification):

All Counsel of Record

---

[9] All other conditions of the November 20th CMO remain in effect.